## THOMASON v. UNITED GAS PUBLIC SERVICE CO. *
### No. 8603.

Circuit Court of Appeals, Fifth Circuit.
Aug. 8, 1938.

G. P. Bullis, of Vidalia, La., for appellant.

Geo. Gunby and Allan Sholars, both of Monroe, La., and C. Huffman Lewis, of Shreveport, La., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, J. M. Thomason, brought this suit against United Gas Public Service Co., to recover additional royalties for gas produced on land owned by him; for damages. for failure to develop the land and protect it from drainage; and for triple damages. under the provisions of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and a similar act of Louisiana, Act No. 11 of 1915, Ex.Sess. Exceptions of no right or cause of action and res adjudicata were sustained and the suit was dismissed. The petition is inartificially drawn and very lengthy but the material facts disclosed may be somewhat briefly stated.

From the petition and annexed exhibits. the following facts sufficiently appear: Petitioner executed three oil and gas leases on land owned by him in Richland Parish, Louisiana, in what is known as the Richland Gas Field: (1) Lease to Fuller and Massart, executed December 26, 1926, cov-. ering 12 acres. (2) Lease to Feazel executed July 8, 1927, covering 80 acres. (3) Lease to MacDonald executed February 1, 1928, covering 40 acres. All the leases were for terms of five years or as long thereafter as oil. or gas might be produced. The lessees were obligated to drill a well within one year after execution of the lease but this might be postponed by the payment of annual rentals. All the leases provided for a royalty of ⅛ of the value of the gas produced, calculated at two pounds above atmospheric pressure. The Fuller and Massart and the MacDonald leases provided for payment of the royalties based on the market value of the gas. In the Feazel lease the royalty was to be paid on the value of

*Rehearing denied Sept. 16, 1938.

the gas fixed at three cents for 1000 cubic feet. A well was drilled on the Feazel lease and produced gas in paying quantities, upon which plaintiff has received his royalty as stipulated in the lease. No wells were drilled on the MacDonald and Fuller and Massart leases. All the leases were acquired by defendant through mesne conveyances.

The petition alleges that the gas under the land covered by the leases had been drained by other wells in the vicinity, particularly a well that was allowed to run wild for a considerable period, all of which wells were under the control of defendant; that his remedy to cancel the leases would be ineffective because of the monopoly of the field by defendant and various named associates, which would prevent his disposing of leases in event those existing were cancelled. Based on allegations of monopoly by defendant and other named parties, conspiracy and that all the gas produced from the Richland Field moved in interstate commerce, plaintiff prayed for triple damages under the Anti-Trust laws of the United States and the State of Louisiana.

The petition does not allege that the defendant has failed to pay yearly rentals for the privilege of deferring the drilling of wells on the MacDonald and Fuller and Massart leases. It was admitted in argument that the rentals had been paid and accepted.

The plea of res adjudicata applies only to the Feazel lease and is based on a judgment rendered by the First Judicial Court of Caddo Parish, Louisiana, dismissing on exceptions a suit brought by plaintiff against State Line Oil and Gas Co., the predecessor in title of defendant. In that suit the allegations of the petition were practically the same as in this suit. The judgment became final by failure of plaintiff to appeal within the delays allowed.

We agree with the conclusion of the district court as to the plea of res adjudicata.

It is the general rule that there is an implied covenant in all oil and gas leases that the lessee will reasonably develop the land and drill as many wells as may be necessary to protect it from drainage by other wells in the vicinity, for the best interests of both the lessor and himself, but the obligation does not attach until oil or gas in paying quantities has been shown by a test well driven. Thornton Oil & Gas, 5th Ed. §§ 154, 155. This rule obtains in

*Rehearing denied Sept. 16, 1938.

Louisiana but it has been held that where no well has been driven and drilling may be postponed by the payment of rentals, the sole remedy of the lessor is to sue for cancellation of the lease. McCoy v. State Line Oil & Gas Co., 175 La. 231, 143 So. 58.

The allegations as to monopoly and conspiracy are too complicated and involved to be briefly stated. The district court held the suit would not lie on that ground as the production of natural gas is not interstate commerce. We agree with that ruling. Furthermore, it may be noted that unless damages are proven there would be no basis for multiplying them under the Anti-Trust laws.

The judgment is affirmed.