**ISELIN et al. v. LACOSTE.**
Civil Action No. 10803.

District Court, W. D. Louisiana,
Monroe Division.
July 26, 1944.

Geo. Wesley Smith, of Monroe, La., L. Brvan Dabney, of Vicksburg, Miss., and Hudson, Potts, Bernstein & Snelling, of Monroe, La., for plaintiffs.

Culkin, Laughlin & Thames, of Vicksburg, Miss., and Fred C. Claiborne, of New Roads, La., for defendant.

DAWKINS, District Judge.

Plaintiffs claim title to a tract of land known as "Diamond Point", comprising 959.32 acres, more or less, together with 2000 acres of "accretion", more or less, and making a total acreage of 2959.32. The property is described as follows:

"Fractional Section 17, containing 112.28 acres;

"Fractional Section 19, containing 164.24 acres;

"Fractional Section 20, containing 168.12 acres;

"Fractional Section 21, containing 165.91 acres;

"Fractional Section 22, containing 176.35 acres;

"Fractional Section 23, containing 172.42 acres;

"Township 14 North Range 14 East, together with all the accretions thereto belonging, and all improvements thereon situated."

It is alleged that the lands are situated in the Parish of Madison, Louisiana. Attached to the petition is an exhibit marked "A" as a "deraignment of title" and a United States township map of such fractional sections marked "B," both of which are "made part of the petition."

The prayer is for a declaratory judgment decreeing plaintiffs the legal owners in "fee simple" of the lands "being and situate in Madison Parish, Louisiana."

On May 2, defendant, Arnaud Lacoste, moved for summary judgment under Rule 56 of the Rules of Civil Procedure, 28 U.S. C.A. following section 723c, "dismissing this action" as a "matter of law" on the grounds that: (1) The complaint does not state a cause of action upon which relief can be granted; (2) that the matter in

controversy has been settled by "final judgment on the merits" in the Federal courts for the Southern District of Mississippi, in an identical suit between the same parties and affirmed by the Court of Appeals for this circuit, 139 F.2d 887; and (3) that plaintiffs are estopped from asserting a different state of facts here from those alleged and adjudicated in the said former suit.

In the alternative, defendant asked that, if the Court should conclude that he is not entitled to summary judgment on the face of the papers and the exhibits tendered by complainants and himself, that a pre-trial conference be had for the purpose of settling all disputed facts, leaving the matter to be tried only on those which are left in controversy.

On May 13, 1944, plaintiffs filed an amended petition, adopting "all the allegations of the original petition," and charging in substance that, while they had filed and prosecuted a similar suit in the Federal Courts of Mississippi, as alleged by defendant, asking for "declaratory relief * * * involving the right and title to these presents" (setting forth the same exhibits as are attached to the petition in the present suit), that, "through error and inadvertence of counsel, said suit was filed in Warren County, Mississippi, which court had no jurisdiction over said property, which as shown, was situated in Madison Parish, Louisiana"; and that a motion to dismiss had been filed in that court on the grounds that (1) the complaint there did not state grounds upon which relief could be granted, and (2) that the complaint itself showed plaintiffs had no interest in the subject matter of that suit because they had previously conveyed all the lands to Mengel and Co. The amended petition in the present case then recites the proceedings in the district and appellate Federal courts for the Southern District of Mississippi, in much the same order as the defendant had done in the present motion for summary judgment. There then follows a rather long and somewhat involved paragraph in the amendment, which, in effect, assails the findings of the Circuit Court of Appeals that the property was situated in Mississippi, notwithstanding plaintiffs' allegations there, and as conceded by defendant in that suit, much of the language used in the amendment here being argumentative and appropriate to a motion for rehearing before the court, which had rendered that judgment.

In a succeeding paragraph, the amendment recites that the Fifth Circuit Court of Appeals had found that the plaintiffs there, who are the same in the present case, had disposed of the lands through the Mengel Co., but that the said holding conflicted "with the allegations of the petition which had been filed on behalf of plaintiffs and in direct conflict with the particular description of said property contained in exhibits annexed to the petition * * *"; that jurisdiction had been exercised by the Mississippi courts "apparently through the error and inadvertence of plaintiffs' counsel" in alleging that the property in question there and here was in Mississippi, when "in fact and in law, and as conclusively shown by other allegations," as well as "by the exhibits the same was situated within the State of Louisiana"; that without any purpose to criticize these courts they had misconstrued "the actual situation, not only because of said error of counsel, but also because of the extremely complicated and confusing state of facts, out of which the said accretion of plaintiffs' land in Louisiana ensued, and the length of time involved"; that plaintiffs should have "opportunity to prove facts properly alleged, and that notwithstanding inadvertence and partial error, the litigants should not be denied a full and fair hearing, especially where the court, whose decision is relied on, had no jurisdiction, and which so obviously, demonstratively (?) and conclusively misconstrued, not only the allegations of the petition before it, but the exhibits and facts thereby thoroughly disclosed to it."

The case has been submitted on the motion for summary judgment, based upon the allegations and exhibits attached to the bill of complaint on the part of plaintiff, together with copy of the transcript and briefs before the Court of Appeals in the case from the Southern District of Mississippi offered by defendant.

An analysis of the pertinent allegations of the bill of complaint in the Mississippi case shows that plaintiffs set forth their title and submitted substantially the same exhibits as in the present suit, to establish that from the year 1829 "the eastern ends of fractional sections 17 and 19 were submerged by the flow of the Misssisippi and that from about 1867 to 1882, the remaining sections 20, 21, 22 and 23, were sub-

merged and then reappeared as identical sections in the formation of an island in the Mississippi River * * *," which later attached itself to the east bank or Mississippi side and is "now known as Diamond Point in Warren County, Mississippi * * *." While in the present case it is alleged that said "Diamond Point," composed of the same fractional sections, "lies in Madison Parish, Louisiana"; that the "eastern ends of fractional sections 17 and 19 were submerged by flow of the Mississippi River"; and that an island on Section 18, Township 14 North, Range 14 East, Madison Parish, Louisiana, was formed on the Sargent's Point, Louisiana side of the river, across the river from Newtown, Mississippi, and the river bank up stream, above the island, and across the river from sections 5 and 6, Township 14, Range 2 East, Warren County, Mississippi, "caved so rapidly and perceptibly on the island above Sargent's Point, mainland, Louisiana side," it caused "water rushing through the slough between the island and Sargent's Point, mainland, and the river to shift its main channel from east to west side of the island into what was formerly a slough and the accretion of land building from the east side of the island finally connected to the Mississippi shore."

It is exceedingly difficult to understand the allegations in the original and amended petition in the present case except upon the idea that plaintiffs now contend that Diamond Point Island was first formed on the Louisiana side and that the river suddenly changed its course during high water and established its main channel west of the property now claimed. If, as apparently intended and set forth in the first suit filed in Mississippi, the eastern ends of these fractional sections became submerged, and while in that condition, the western shore of the river (on the Louisiana side) was gradually and imperceptibly washed away, while accretion formed on the east side, the boundary line between the two states (the thread of the stream) moved westward with the river, and if the island was formed on the eastern ends of these fractional sections and reappeared east of the thread of the stream as an island, they became as matter of law, property within the boundary of the Mississippi, just as was alleged and sought to be shown in the Mississippi case.

I do not appreciate what particular bearing the added allegations with respect to Sargent's Point have upon the merits of the present case. If the island had been formed on the Louisiana side and there was a sudden change in the main channel of the river, and then, at a later date, that channel was suddenly moved "three or four miles" still further west, the space between Sargent's Point had filled in where the main stream had been and formed one continuous body of land, the ownership of such land might become an issue between those who had owned the Sargent's Point property and the owners of the alleged island previously formed in the river. It does not appear, however, that, if true, this added anything to the strength of plaintiffs' title in the present controversy with defendant, but serves only to confuse the matter, since nothing is said that either plaintiffs or defendants were ever owners of Sargent's Point.

■ The following taken from the syllabi of the case between these litigants over the lands in the Mississippi courts, as reported in 5 Cir., 139 F.2d 887, states the law rather clearly covering a situation like the present, as shown by the supporting authorities cited in footnotes, to-wit:

"Where main channel of stream forms the boundary between states, and gradual changes wrought by natural causes occur in topography of banks or islands and in channel, main channel of stream, in whatever changed location it may be, continues to be the boundary, but where avulsion occurs by freshet or flood, and course of stream suddenly is changed, boundary remains at center of old channel of deserted river bed."

Both the language used in the bill of complaint in the Mississippi case and the interpretation by Judge Holmes on appeal had the effect of placing this property in the category of "gradual and naturally" formed lands, in which the boundary line between the states followed the thread of the stream in a westerly direction, and in which islands formed east of that line, as it advanced, with accretions thereto, became property within the state of Mississippi. However, in the present suit, plaintiffs attempt to take the matter out of that category by changing the allegations of basic facts as to how, when and where the island was formed. In one instance (the Mississippi case) plaintiffs said the lands in Louisiana, which they claim, became submerged by the Mississippi River, and years later appeared as an island on the Mississip-

pi side; while in the present petition it is alleged that, although the eastern ends of these fractional sections became submerged (just as in the case in Mississippi), the island was formed "on the Sargent's Point, Louisiana side of the river"; that this was followed by caving of the bank on the Louisiana side above the said island so "rapidly and perceptibly * * * it caused water rushing through the slough between the island and Sargent's Point, mainland, and the river to shift its main channel from the east to west side of the island into what was formerly a slough and the accretion land building from the east side of the island finally connected to the Mississippi shore."

The original petition filed in the present case contained no allegations of error, mistake or fraud, but was simply a change and contradiction of the basic facts as to how the lands were formed. Had the present allegations been made in the case in Mississippi, I daresay that immediately that court would have discovered its lack of jurisdiction, unless defendant in answer had denied them and himself alleged facts to show that the property was situated in Mississippi. Those courts would then have decided the issues of fact and law involved therein, which they undoubtedly had the power and jurisdiction to do. But, instead, the present plaintiffs gave to the Mississippi courts what they claimed to be the facts showing the property to be in Mississippi, which were admitted by defendant, invoked their jurisdiction and judgment, and after losing the case, now attempt to change their solemn judicial allegations in order to have this court again pass upon their claim to the property; all upon the same exhibits and documents used in the first instance, the only difference being the allegations as to the action of the river and its legal consequences to the property in dispute.

■ The amended petition only inferentially seeks to charge mistake and error as to the facts concerning the action of the river, which would have controlled the legal issues affecting this property, by alleging only that "through error and inadvertence of counsel, said suit was filed in Warren County, Mississippi." It does not charge that either the plaintiffs or their counsel misunderstood the facts which they alleged as to the action of the river in the formation of Diamond Island. They

simply say that the courts misunderstood and misconstrued their allegations. If litigation over the same property can thus be carried on successfully in two federal courts, in different states, contiguous to the river, where the island is claimed to have been formed, it would seem that if it had happened that the location had been in, say, the Red River, adjacent to where three states, Texas, Arkansas and Louisiana, join, it would have been possible for the plaintiffs to invoke the decisions of three separate federal courts on the same chain of title, merely by varying the allegations as to the action of the river as placing the property successively within the boundaries of those three states. It does not seem that this can be done.

■ ■ While it is true, that if a court does not have jurisdiction of the subject matter, where that is the sole and only basis for the exercise of its powers, the judgment rendered by it has no legal effect, and may be attacked collaterally, but where that jurisdiction has to be determined by facts, dehors the record, or rests upon the statement of facts in the pleadings, which one party alleges and the other party admits, like any other issue of fact, when found, has the effect of the thing adjudged and can not be otherwise changed except upon a showing of fraud. Thomason v. United Gas Pub. Service Co., 5 Cir., 98 F.2d 526; Baldwin v. Iowa State Trav. Men's Ass'n, 283 U.S. 522, 523, 51 S.Ct. 517, 75 L.Ed. 1244; Preston v. Kaw Pipe Line Co., 10 Cir., 128 F.2d 162.

■ There is another feature of this case, which, it seems, would bar its being prosecuted in this court again. There was the requisite diversity of citizenship, both plaintiffs and defendant were before the Mississippi courts, not merely in a proceeding in rem but on a personal submission to its jurisdiction, which put at issue other essential allegations of fact. This was the claim that the chain of title was made part of the bill and it was decided that plaintiffs had sold this same property, and therefore were without interest. If there was jurisdiction, apparently all the evidence necessary to decide that question was before the Court.

If the plaintiffs in reality claim error or mistake with regard to the allegations of fact in the proceedings in the courts of Mississippi, then their remedy was an action to set aside that judgment for those

reasons. That court alone would have the right to set aside its judgment based upon error or fraud.

It would be in a case only where there was clearly an utter lack of jurisdiction that such a judgment could be ignored and collateral attack made in another court.

The defendant should have judgment sustaining its pleas of res adjudicata and estoppel and rejecting plaintiffs' demands.