**John F. ISELIN and Joan B. Iselin,**
**Appellants,**

v.

**Lester J. MENG, Lester J. Meng, Jr. and**
**James C. Meng, Appellees.**

No. 19315.

United States Court of Appeals
Fifth Circuit.

Aug. 24, 1962.

Rehearing Denied Oct. 17, 1962.

Lucius Bryan Dabney, Lucius B. Dabney, Jr., of Dabney & Dabney, Vicksburg, Miss., Thos. W. Davenport, of Davenport, Farr & Kelly, Monroe, La., for appellants.

J. D. Thames, Vollor & Thames, Vicksburg, Miss. (Lawrence J. Franck, Vicksburg, Miss., of counsel), for appellees.

Before JONES, WISDOM and GEWIN, Circuit Judges.

JONES, Circuit Judge.

A tax deed was executed on April 30, 1949, to the appellants by the Sheriff of Madison Parish, Louisiana, describing and purporting to convey Fractional Sections 17, 19, 20, 21, 22 and 23, Township 14 North, Range 14 East, with an exception of land described in a deed to which reference was made. The land, so described, was adjacent to the Mississippi River which, at the situs of the land, was the boundary between Louisiana and Mississippi. The basic question, which the appellants tenaciously seek to renew, has been the subject of prior consideration by the courts and in none of the cases has the position asserted by the appellants received any judicial sanction. The earliest action, of which we have knowledge, was brought by Albert W. Iselin and another in the Southern District of Mississippi, seeking a judicial declaration that they were the owners of the same land as is here involved. The claim of ownership was based upon a deraignment of title describing land in Louisiana where, it was said, the property was known as the Woodyard of Sargent's Point. The claimants asserted that the land was originally in Louisiana but through accretion over a long period of time, it became submerged and reappeared as an island in the State of Mississippi. The Court was asked to enter a declaratory judgment that the plaintiff's Louisiana claim of title was paramount to the defendants' Mississippi claim of title. The district court dismissed the complaint and this Court affirmed, holding that the accretions in-

ured to the riparian owner in Mississippi. Iselin v. La Coste, 5th Cir. 1944, 139 F.2d 887, cert. den. 321 U.S. 790, 64 S.Ct. 791, 88 L.Ed. 1080.

The unsuccessful plaintiffs in the litigation in the Southern District of Mississippi, upon the affirmance of the judgment against them, brought a similar suit against the same defendants in the Western District of Louisiana seeking the same relief as to the same land. In this case the plaintiffs referred to the land as being known as Diamond Point in Warren County, Mississippi. In this suit the position was taken that there was not any movement by erosion from Louisiana and accretion to Mississippi, but rather that the land became detached from the Louisiana side of the River by an avulsion caused by a shift in the main channel which placed the land upon the Mississippi River where it ultimately, by accretion, became attached to Sargent's Point upon the Mississippi Mainland. The district court in Louisiana held that the district court of Mississippi had jurisdiction and that its judgment was res judicata. Iselin v. La Coste, D.C.W.D.La.1944, 55 F.Supp. 977. This Court affirmed. Iselin v. La Coste, 5th Cir. 1945, 147 F.2d 791.

At this juncture, chronologically, came the Supreme Court decision in 1955 in State of Mississippi v. State of Louisiana, 350 U.S. 5, 76 S.Ct. 29, 100 L.Ed. 6, reh. den. 350 U.S. 905, 76 S.Ct. 175, 100 L.Ed. 794. There it was held, in a case of original jurisdiction, that the land at Diamond Point was eroded over a long period of time and disappeared, and that Diamond Point Bar, on the Mississippi shore, was built up by accretions until it extended over the entire territory known as Diamond Island or Diamond Island Towhead.

John F. Iselin, the son of Albert W. Iselin, and his wife, Joan B. Iselin, procured a tax deed in 1949 from the Sheriff of Madison Parish describing and purporting to convey the land herein involved by Sections, Township and Range in Madison Parish, Louisiana. These tax deed grantees, the same persons as the appellants in this appeal, brought an action against Lester J. Meng, Lester J. Meng, Jr. and James C. Meng, the appellees here, and others, in the Southern District of Mississippi for a declaratory judgment that they owned the land in question. There the position was taken that at the time their tax deed issued the land was in Louisiana and their title was not lost when a change in boundary put the land in Mississippi. The district court resolved the issue against the Iselins and this Court affirmed. Iselin v. Meng, 5th Cir. 1959, 269 F.2d 345, cert. den. 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed.2d 183, reh. den. 361 U.S. 945, 80 S.Ct. 406, 4 L.Ed.2d 365.

The appeal now before us brings for review the record of another unsuccessful effort to claim ownership of the same land as was involved in the prior litigation. In this action, brought in the district court of the Western District of Louisiana, it is claimed that the property is in Louisiana and was cut off by an avulsion from the mainland of the State. The complaint states that, within the six months preceding the bringing of this suit, appellants have made a remarkable discovery as to the reason for the lack of success which they and their predecessors have previously had. This discovery is that in all of the prior litigation the "sheet-anchor" of their adversaries has been certain maps of the Mississippi River Commission showing the situs of the land as Diamond Point (Mississippi) when it should have been shown as Sargent's Point (Louisiana). The gist of this contention is that the maps which were before the Special Master in State of Mississippi v. State of Louisiana were wrong. To establish this contention the appellants took the deposition of Albert W. Iselin who testified that "The maps had been changed from Sargent's Point to Diamond Point, and when the court looked at that map, supposing that the Mississippi River Commission, who made the maps, were reliable people, they, of course, decided and dismissed the case, and we didn't have a chance to testify to anything." The theory of an avul-

sion was once more asserted. The appellant's brief tells us that when Albert W. Iselin speaks, he speaks ex cathedra. In so speaking he says that the land involved "is erroneously and fraudulently called Diamond Point," Mississippi, rather than being described as it should be as Sargent's Point, Louisiana. Mr. Iselin testified that

"[I]n 1904 there was a 'cut-off' made, Killakranka 'cut-off'; and my understanding from the Mississippi v. Louisiana case, where on pages 5 and 6 it says that where a 'cut-off' occurs the boundary—state boundary—remains in the deserted river bed, that is the 1904 deserted river bed; therefore, the state boundary line remained in the deserted river bed and didn't follow through the 'cut-off'—the Killakranka 'cut-off' in 1904. A boundary doesn't follow through a 'cut-off.'"

The maps, said Mr. Iselin, which refer to Diamond Point are wrong and had been changed from Sargent's Point.

■ The appellants insist that there should have been a hearing on the merits rather than being dismissed on the merits, that there are complex questions of law and fact and difficult interpretations of boundaries upon which they should have a day in court. The answer is that there has been a hearing on the merits, the questions of law and fact have been decided and the interpretations of boundaries have been decided. In prior litigation, by which the appellants are bound, it has been determined that land claimed by them is in Mississippi and not in Louisiana, and that they acquired no title to the land by their tax deed. This was decided, and the references in the opinions and elsewhere to Diamond Point and Sargent's Point were merely descriptions of the areas and not decisive of the issues.

■■ The Supreme Court, in State of Mississippi v. State of Louisiana, held that the land is in Mississippi. In our opinion in Iselin v. Meng, 5 Cir., 269 F.2d 345, 348, it was held that the litigants to titles over lands are bound by the Supreme Court's determination of boundaries between states. These decisions, the appellants say, are wrong. Their action here is a collateral attack . upon the judgments in these cases. We do not agree, but in any event it can be said, as was said in one of the earlier Iselin cases:

"From time immemorial the courts have held that a judgment, valid on its face, cannot, in the absence of fraud in its procurement, be collaterally attacked as to mere errors or irregularities committed by the court in the exercise of its jurisdiction or in the course of the proceedings even though errors and irregularities may appear on the face of the record." Iselin v. La Coste, 5 Cir., 147 F.2d 791, 794.

In different language this Court has thus expressed the same principle:

"The doctrine of res judicata does not depend upon whether or not the prior judgment was right. It rests upon the finality of judgments as a matter of public policy, to the end that controversies once decided shall remain in repose." Rubens v. Ellis, 5th Cir. 1953, 202 F.2d 415, 418.

The present suit is an attempt to relitigate questions decided, relitigated and again decided. The dismissal of the complaint by the district court was correct. Its judgment is

Affirmed.