## WOOLGAR et al. v. LA COSTE.

### Civ. No. 1396.

District Court, W. D. Louisiana, Monroe Division.

Jan. 2, 1947.

M. C. Redmond, of Monroe, La., and Wils Davis, of Memphis, Tenn., for plaintiffs.

Culkin, Laughlin & Thames, of Vicksburg, Miss., and Ferd C. Claiborne, of New Roads, La., for defendant.

DAWKINS, District Judge.

The complaint alleges ownership in plaintiffs, residents of Indiana, of certain lands described as being in Madison Parish, Louisiana, and that defendant, a citizen of Louisiana, "has illegally taken possession of same and refuses to surrender possession thereof * * * although the said defendant has no legal title thereto." The prayer is for a judgment "declaring petitioners to be the sole joint owners in equal parts of section 18, township 14, range 12 east, containing 629.12 acres, together with accretions and alluvion to the amount of 1,671 acres, making a total acreage of 2,300.12 acres, more or less, all being situated within the Parish of Madison, State of Louisiana * * *", and that plaintiffs be placed "in possession * * * and that the said Arnaud LaCoste be * * * ejected from said lands." The petition otherwise sets forth a deraignment of title and was filed March 5, 1945.

On May 1, 1945, defendant answered denying that plaintiff owned the lands in question, and averred that the deraignment of title discloses that it was based upon a quit-claim deed without recourse from J. B. Snyder, for which they had paid the sum of $2,000; that the lands which defendant owns and which are in his possession, are known as Diamond Point in the County of Warren, State of Mississippi, and had been so adjudicated to belong to him by the federal courts of that state and that the lands claimed by plaintiff as "Section 18 in Township 14, North, Range 14 East * * * have never been known as 'Diamond Point'"; that the lands claimed by plaintiffs and shown on the map attached to the complaint "are far to the south of the lands owned and occupied by defendant" and that they, the plaintiffs, do not own any accretions north of the land as described.

The answer further outlined briefly the title of Section 18 of Township 14, North, Range 14 East in Madison Parish, and averred that all of it had gradually eroded away, was washed into the Mississippi River, and for this reason was removed from the tax rolls of said parish.

Defendant further denied that this court has jurisdiction of the property of which he is in possession for the reason that the federal courts of Mississippi and this court have held them to be in the State of Mississippi. The answer then proceeds to delineate LaCoste's title as it appeared in Mississippi. It is also averred that plaintiffs seek to "jump" the Mississippi River and claim lands in the State of Mississippi as accretions to other lands situated in Louisiana, which "as a matter of law" they can not do. The answer sets forth proceedings by the Government to condemn certain lands for public purposes known as "Diamond Cut Off", including those of the C. W. Hunter Co., "which joins the lands of the said defendant, LaCoste, on the south", and lying between the lands of defendant and those claimed to be the lands of these plaintiffs, and in which proceeding all persons claiming any interest therein were cited to appear and assert the same, but that plaintiffs and their predecessors made no claim whatever thereto.

The answer further alleged that A. W. Iselin, father of plaintiffs, purchased the claim from Snyder, which is presently asserted in this case and placed it in the name of his said daughters on March 18, 1944, at which time, the said Iselin "was

himself claiming ownership of the lands of defendant, known as 'Diamond Point' ", which he, at that time, admitted were in the State of Mississippi, known by him to have been adjudged by the federal courts of Mississippi to be in said state and to belong to defendant, and that neither the said Iselin nor the plaintiffs have ever been in possession of defendant's lands or those described in the complaint, but the latter had been washed into the Mississippi River. Defendant pleaded the judgments in the federal district and appellate courts of Mississippi and of this court in the litigation between him and the said Iselin as res judicata of the present case.

On October 7, 1946, defendant filed a motion for summary judgment with affidavit and exhibits attached. Thereafter, on October 15th of the same year, plaintiffs filed a motion to dismiss the complaint without prejudice or as in case of nonsuit. The latter motion was opposed by defendant, and this is the first matter to be considered.

(1) The motion to dismiss recites that plaintiffs "hereby give notice of dismissal of this suit; that no counterclaim, cross claim or third party claim, or reconventional demand of any kind has been filed in this matter; that this dismissal is without prejudice; that no suit or cause of action based on or including the same has ever been dismissed in any court of the United States or in any state." Obviously, the allegations of this motion were not correct, for the simple reason that the motion for summary judgment, as above shown, had already been filed, and it asked judgment of the court upon the pleas and the evidence forming part of that motion. In addition to this, application to take the testimony of the plaintiffs, to show their relationship to A. W. Iselin and its bearing upon the allegations that they were in privity with him in respect to the claim, insofar as the title to Diamond Point and judgments of the Mississippi federal courts that this property was in the State of Mississippi, were concerned. In lieu of their testimony, a stipulation had been entered into, in which it was recited that they were the daughters of Iselin; that they had no knowledge of the subject matter of this suit "other than that obtained from their father * * * or of that certain tract of land lying, being and situated in Madison Parish, State of Louisiana, Section 18 in Twp. 14, N., R. 14 E."; that they had been informed by their father of his purpose to donate to each of his three children, including these plaintiffs and a brother, the sum of $1,000 or its equivalent and were given the choice between the cash or purchase of the land from Snyder in their names for the sum of $2,000; that the purchase was arranged by their said father, A. W. Iselin, and the title taken in their names under a written power of attorney, which he held; "that all the details of the transaction were handled by Mr. Iselin, and they know nothing concerning the lands"; and that the said power of attorney empowers him "to do all things pertaining to this land, including the conduct of the pending litigation and that Mr. Iselin has control of the litigation and is acting in the place of the daughters under said power of attorney".

Attention of local counsel associated for plaintiffs was called to the discrepancy in the motion to dismiss, which failed to take into account the motion for summary judgment, and he advised the court that he would call upon the principal attorneys to correct this allegation, but so far nothing in that direction has been done. It therefore becomes the duty of the court to dispose of the matter on the basis of the record as it actually exists. The applicable Rules of Civil Procedure are (1) 41(a) (1), 28 U.S.C.A. following section 723c, which provides "that subject to the provisions of Rule 23(c), and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service of the answer or (ii) by filing a stipulation of dismissal signed by all the parties who have appeared generally in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication on the merits when filed by the plaintiff who has once dismissed in any court of the United States or any state an action based on or including the same claim".

Paragraph (2) of said rule provides that "except as provided in paragraph (1) of this subdivision of this rule, an action shall

not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. *If a counterclaim has been pleaded by defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication of the court."* (Emphasis by the writer.)

Rule 23(c) deals with class actions and has no application here.

The complainant in the present case rests the claim of title upon a quitclaim or deed without recourse from J. B. Snyder, dated March 18, 1944, which was while the litigation between Iselin and his wife against defendant over the ownership of property known as Diamond Point was pending, in which plaintiffs there had alleged, was in the State of Mississippi. The delineation of title from Snyder attached to the petition here, begins with a private land claim by one Solomon C. Phillips, dated January 6, 1821, covering Section 18, T. 14, N., R. 14 E., consisting of 629.12 acres, covered by U. S. patent No. 1117598, dated December 2, 1943, filed and recorded in deed book II p. 475 of the records of Madison Parish on February 16, 1945. Snyder purchased at "a special sale for taxes" December 3, 1932, "Fractional section 18 together with all accretions, alluvion or batture thereto attached and belonging, in Township 14 North, Range 14 East, containing 630 acres or more, all in Madison Parish, Louisiana", for the sum of $81.23, and the transfer was recorded December 5, 1932, in deed book "Z", p. 24 of the records of Madison Parish. On March 18, 1944, plaintiffs in this case, through their said father as agent and attorney in fact, purchased from Jeff B. Snyder, "quit claim deed, especially without warranty" for the sum of $2,000, all of said "Section 18, Township 14 North, Range 14 East, in the district of land north of Red River, containing, according to the original survey, 629.12 acres of land situated in Madison Parish, Louisiana, together with all accretions accruing thereto", as per deed filed and recorded on the same date in book "HH" of the records of said parish. In the original suit filed in the United States District Court in Vicksburg, Mississippi, by Iselin and his wife, they alleged the property was in that state and it was described as fractional sections 17, 19, 20, 21, 22 and 23, "originally in the Parish of Madison, State of Louisiana, but which for some time past, and at present comprises 'Diamond Point' in said Warren County, State of Mississippi, having been submerged and reappeared as an island," which it was alleged was in Township 14 N., R. 14 E., "together with all the accretions thereto belonging and all improvements thereon situated, and plaintiffs attach hereto as Exhibit 'A' a deraignment of their title to the aforementioned tracts of land and ask that same be made a part of this bill of complaint * * *". The chain of title in that suit began with the U. S. abstract of entries which showed lots 17 and 19 (presumably the same property claimed as fractional sections by those numbers) as having been covered by certificate number 1332, to Robert J. Walker and John Maxwell, dated August 26, 1833; lots 20 and 21 of the same entrymen covered by certificate number 1333, and lots 22 and 23 to Thomas Nernard, and the said Robert J. Walker, covered by certificate number 1359. There appeared on the margin of the abstract of entries a notation of one of the attorneys, who had compiled it, that he had on "April 29, 1931, * * * obtained copies of original patents from the U. S. Land Office, and placing them of record in Madison Parish, Louisiana." The title was then traced through mesne conveyance to Albert W. Iselin and Louise Iselin, husband and wife, who acquired on October 5, 1926 from Louis A. Wilkinson and Merlin R. Moser, the fractional sections 17, and 19 to 23, both inclusive, "together with all the accretions thereto belonging and all improvements thereon situated, in Madison Parish, Louisiana, known as the 'Woodyard' or 'Sargent's Point' Plantation, consisting of 5,500 acres", for the stated consideration of $1 and recorded October 15, 1926. (Under the law of Louisiana the stated consideration was "vile" and insufficient, so that on December 22, 1926, Mr. and Mrs. Iselin appeared before a notary public and made affidavit that the true consideration "was the assumption * * * of certain mortgage indebteduness

* * * for the principal sum of Thirty-Five Thousand Dollars ($35,000), and the further consideration of the transfer of certain other property * * *." (It will be noted that these descriptions do not include Section 18 of Township 14 N., R. 14 E.)

In support of the motion for summary judgment in the present case, there was filed by defendant a plat or tracing bearing the legend "shore line of the Mississippi River, vicinity of Davis Island, replatted from copies of original plats of General Land Office Surveys of 1826-1848, filed in the official records of the U. S. Engineers' Office, Vicksburg, Mississippi * * *."

Attached to this opinion is a rough sketch of all the sections (17, 18, 19, 20, 21, 22 and 23) in Township 14 N., R. 14 E., as they appeared on those official maps at that time. From this sketch it is seen that all the others, in fact, its area, judging from appearances on the plat, was equal to about one-half of all the other sections put together. However, not only was it (section 18) not included in the Mississippi suit (unless it was embraced in the area known and alleged as Diamond Point), but its chain of title runs back through other owners to different sources from that of sections 17, 19 and 20 to 23, both inclusive. Therefore, the matter would appear to turn upon the point as to whether this section 18, or the body of land which stands in its place, if any, was necessarily embraced in or included in the Mississippi litigation; and if not, whether, as defendant contends, it was separated from the lands now occupied and claimed by defendant, by property owned by others, and which, of course, would prevent any part of the lands claimed by defendant from becoming attached to

the said sections, including 18, now claimed by plaintiffs, were in Louisiana and that the latter was many times larger than any of section 18 by accretion or otherwise, unless the same had taken place before that separate ownership had become vested in the

intervening owner. In view of the necessity for determining these issues, it is not seen how plaintiffs can be permitted to dismiss their complaint and still leave the question of defendant's ownership of his presently possessed and occupied lands to be determined. The motion to dismiss will therefore be denied.

On the merits of the motion for summary judgment, plaintiffs have offered nothing, either in the way of proof or argument, by brief or otherwise, to support their title, notwithstanding the matter was submitted on October 16th, on briefs, that of plaintiff to be filed in 20 days, and the fact that the court more than two weeks ago called attention of local counsel to this situation.

The affidavit of defendant, LaCoste, in support of the motion recites that he is the owner of "certain lands in Warren County, Mississippi, known as 'Diamond Point' and has been in open, notorious, continuous, hostile and adverse possession of said lands since the date of purchase and that said lands known as 'Diamond Point' * * * are the only lands that he now owns or has ever owned in Warren County, Mississippi;" that Iselin and his wife had filed suit in the "Louisiana District Court for the Western District of Louisiana (Mississippi)" against affiant claiming said lands, which was decided in affiant's favor, both by the trial and appellate courts; that thereafter a similar action was filed in this court for the same purpose, which was likewise decided against said plaintiffs. All the judgments in these cases are pleaded as res judicata.

The proof offered by defendants is that the only lands claimed by him are the same as those involved in the suits in Mississippi, and, since plaintiffs allege defendant's possession of the lands which they now claim, there would appear to be nothing in either the pleadings or evidence now before the court, to dispute this contention, and hence, although five of the sections claimed by Mr. and Mrs. Iselin (17, 19, 20, 21 and 22) in the former suits, are shown on the sketch in the footnote taken from the consolidated maps or plats made by the Government engineers between 1826–1848, to have surrounded section 18 of the said township and range on three sides, (north, south and west), it is not clear whether those lands so adjudicated by these former decisions were or were not part of section 18 or accretions thereto, and as to which the title of defendant was settled and quieted as between him and Mr. and Mrs. Iselin.

Even as to Mr. and Mrs. Iselin, original plaintiffs in the suits in Mississippi, and later in this court, in which it was conclusively held that the property there was situated in Mississippi and belonged to this defendant, it is doubtful whether, as plaintiffs here, they would be bound by res judicata except upon the theory that this identical property was included in that judgment and LaCoste's title finally determined against the world.

However, the plaintiffs here are not resting upon the record titles in those cases but assert their rights under an entirely different chain, including the original patent, covering a distinct parcel of land (section 18) separated by another entryman from the public domain. Under the law of Louisiana, parol evidence cannot be used to put the title of this section in Iselin, regardless of the fact that all the negotiations were by and the price was paid by him. In the absence of a deed in his name, the only way in which it could be done would be by interrogatories on facts and articles, where he was in possession of the property. If he denied under oath that it belonged to him, defendant would be precluded by his answer. See Dart's R.C.C. art. 2275, and authorities cited thereunder.

If, in the trial of this case it is shown as between the present plaintiffs and the defendant the property in question is in Mississippi, this court will have no alternative but to dismiss it for want of jurisdiction. On the other hand, if it is proven to be in Louisiana, pleas of prescription based upon possession under the law of this state would become applicable. The former judgments bound the parties to those suits and their privies, including heirs who acquired by operation of law; but persons claiming under another chain of title are not so precluded. The motion for summary judgment will be denied.

Proper decree should be presented.

Thus Done and Signed In Chambers at Monroe, Louisiana, this, the ——— day of December, 1946.