### SMITH v. LANDIS et al.
### No. 14501.

United States Court of Appeals,
Fifth Circuit.
March 12, 1954.

Lamar Polk, Polk & Culpepper, Alexandria, La., for appellant.

Wood H. Thompson, Thompson, Thompson & Sparks, Monroe, La., for appellees.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

■ Plaintiff, James B. Smith, alleging himself to be a "resident" of the State of Texas, brought this suit in the Alexandria Division of the Western District of Louisiana against B. S. Landis, Mrs. Zoe B. Snyder, John B. Snyder and Mrs. Zelma S. Pipes, "residents of the Parish of Franklin, La." which is in the Monroe Division. In exceptions, defendants insisted the complaint failed to state the citizenship of either plaintiff or defendants, but merely the residence, and the action was brought in a division other than that where the defendants lived, but these were overruled and we think correctly so, because the action was one of a local nature, or in rem, involving real property which is located in Catahoula Parish, in the Alexandria Division, of which we can take notice.

The nature of the case and the statement of what happened in the proceedings in the State Court, are so well and correctly stated by the lower judge, Honorable Gaston L. Porterie, now deceased, in his opinion reported in 106 F. Supp., beginning at page 264, the same will be adopted and is quoted down to the end of the second paragraph in the second column on page 266, as follows:

"On August 19, 1927, one F. R. Wilson, in Suit No. 4590, petitioned the Seventh Judicial District Court of Louisiana, Catahoula Parish, for a judgment against J. B. Smith (complainant here) in the sum of $749.79, with 5% per annum interest thereon from judicial demand until paid, for work done by Wilson for Smith. Alleging Smith a resident of Bay Saint Louis, Mississippi, Wilson attached Smith's properties—the properties involved in this action—in Catahoula Parish for the purpose of jurisdiction and further prayed that Smith be served through a curator ad hoc appointed by the court for that purpose. On the same day an order was signed appointing an attorney at law to represent Smith and ordering the issuance of the writ of attachment upon Wilson's furnishing bond in the sum of $250. The attorney accepted the appointment and the $250 bond was filed in August of 1927.

"On April 4, 1928, citation was issued to Smith; it was personally served on his curator ad hoc; and, the writ of attachment was issued. On April 19, 1928, the sheriff seized the properties and posted a copy of the writ on the principal front door of the courthouse at Harrisonburg, Louisiana, the parish seat of Catahoula Parish. A notice of this seizure was served on the curator ad hoc in his office in Harrisonburg, on April 21, 1928.

"On December 3, 1928, judgment was signed against Smith in favor of Wilson for the amount sued for, with interest and costs, and on the same day that judgment was filed with, and the next day was recorded by, the Catahoula Parish Clerk of Court. This judgment recites that a '* * * default was granted on Nov., 26th, 1928, and not set aside * * *'; the attachment was recognized; and, the properties were ordered seized and sold by the sheriff to the highest bidder for cash at not less than two-thirds of the appraisement, to pay and satisfy the judgment.

"On December 6, 1928, the curator ad hoc was personally served with a notice of this judgment, from which no appeal, suspensive or devolutive, was taken.

"On January 2, 1929, when this judgment had become executory, Wilson caused a writ of fieri facias to be issued under which the sheriff seized and took possession of the properties and gave public notice that he would sell them at public sale on February 23, 1929, to satisfy Wilson's judgment.

"On February 18, 1929—five days before the scheduled sale—Smith

filed Suit No. 4686 in the same court, naming Wilson and the sheriff as defendants, and prayed as follows:

"(a) To have the judgment against him in Suit No. 4590 declared null and void for want of jurisdiction over his person or over the subject matter; and, on the further ground that the default therein rendered had been confirmed upon illegal, insufficient and incompetent evidence.

"(b) For damages in the sum of $350.

"(c) For the issuance of a temporary restraining order to prevent the sale of the properties on February 23, 1929, and for the issuance of a preliminary and permanent injunction.

"A temporary restraining order was issued on February 18, 1929, prohibiting the sale of the properties on February 23, 1929. The hearing on the rule to show cause why a preliminary injunction should not issue was postponed, by written agreement of counsel for both sides, approved by the court, until March 18, 1929, and the restraining order continued in force.

"On May 20, 1929, Wilson answered alleging the legality and validity of his judgment in Suit No. 4590, and, alternatively, reconvened for a judgment against Smith for the same amount recovered against Smith in Suit No. 4590, with costs and interest from August 19, 1927.

"On June 12, 1929, Smith sold the properties involved herein to Mrs. Sudie J. Dahlberg.

"On June 28, 1929, the same Judge who rendered judgment in Suit No. 4590 against Smith, signed a judgment in Suit No. 4686 rejecting all of Smith's demands therein and dismissed Suit No. 4686 and directed the sheriff to proceed to sell the properties. Smith did not ap-

peal suspensively from this judgment; that is, within ten days under Louisiana law; nor did he apply for a stay of execution of any kind. That judgment in Suit No. 4686, dated June 28, 1929, became executory, under Louisiana law, on July 9, 1929. *Wilson, therefore, caused a writ of fieri facias to issue under the judgment directing the sheriff to sell the properties.* The sheriff seized the properties and gave public notice that he would sell them on August 24, 1929, for not less than two-thirds of its appraised value.

"On August 23, 1929—one day before the scheduled sale—Smith filed his application for, and was granted, a devolutive appeal from the judgment in Suit No. 4686 to the Louisiana Court of Appeal for the Second Circuit, returnable on or before October 1, 1929. The appeal was perfected on September 17, 1929—24 days after the sheriff's sale.

"On August 24, 1929, the sheriff sold the properties for two-thirds its appraised value, or $666.66, to B. S. Landis, a defendant herein. The sale was recorded on September 14, 1929. That the proceeds of the sale went to Wilson is undenied.

"On appeal from the judgment rendered in Suit No. 4686, on original hearing, Smith v. Wilson, 13 La.App. 437, 125 So. 302, the Louisiana Court of Appeal for the Second Circuit affirmed; but, on rehearing, Smith v. Wilson, 13 La. App. 679, 128 So. 682, on June 2, 1930—months after the sheriff's sale—reversed itself and the lower court, declaring the judgment rendered in Wilson's Suit No. 4590, on December 3, 1928, null and void for the reason that the writ of attachment for jurisdiction in Suit No. 4590 was invalid. The appellate court did not rule on Wilson's reconventional demand in Suit No. 4686; nor, of course, did it declare

the nullity of the sheriff's sale, theretofore made, on August 24, 1929, the legality of which was not at issue.

"On February 6, 1931, Landis, a defendant herein and the purchaser at the sheriff's sale of the properties herein involved, transferred to C. L. Snyder an undivided one-half interest in and to the properties, and, on September 21, 1948, by a correction deed, transferred that same undivided interest to the widow and heirs of C. L. Snyder, the other defendants herein.

"On July 31, 1950, Smith purchased the properties involved in this action from Mrs. Dahlberg, and on August 3, 1950, recorded his deed.

"On September 21, 1950, alleging himself a resident of Texas, Smith filed this action against Landis and the widow and heirs of Snyder, all citizens of Louisiana, praying that the sheriff's sale to Landis on August 24, 1929, be declared null and that defendants be decreed to have acquired no rights or interests thereunder.

"In limine litis, before issue joined, defendants questioned the jurisdictional amount involved in this controversy; but, our ruling was that there was over $3,000, exclusive of interest and costs, involved. This Court, therefore, has jurisdiction of the parties and of this controversy. 28 U.S.C. § 1332; 28 U.S.C.A. § 1332.

"As thus drawn, the decisive issue in this action is dependent upon the validity of the sheriff's sale to Landis.

"Plaintiff contends that the sheriff's sale to Landis was null and void for the reasons that (a) *it was made under a judgment which was—though subsequent to the sale—reversed on appeal; and, (b) everything done under the judgment, prior to and after its reversal,* *was null and void, since the appellate court declared the judgment null and void*—for which reasons Landis and his assignees, defendants, acquired nothing by virtue of the sheriff's sale." (Italics by the writer.)

One of the issues involved here is as to whether the sale by the sheriff of the State Court was made under the unappealed judgment in the first case, No. 4590, or in the second, No. 4686 in the State Court. The judgment in the latter numbered cause in favor of the defendants, Fred R. Wilson, et al., reads as follows:

"It Is Therefore, ordered, adjudged and decreed that the demand of the plaintiff be rejected and his suit is dismissed at his cost.

"It is further ordered that the sheriff of Catahoula Parish proceed to sell the property involved in suit No. 4590, wherein plaintiff herein is defendant as provided for in judgment in that suit, rendered and signed December 3, 1928."

Counsel for the parties in the present case made a stipulation consisting of some 26 paragraphs, in which the pleadings and contentions of the parties, as well as what happened in No. 4686, were stated, in substance, that J. B. Smith attacked the former judgment in No. 4590 as null and void and that the defendants, Wilson, et al., insisted that "it was legal and valid and the court was seized with jurisdiction. In the alternative, he asked for judgment against Smith for the amount set forth in the judgment rendered in No. 4590 on December 3, 1928".

Stipulations Nos. 10 and 11 are as follows:

"10. That J. B. Smith, plaintiff in Suit No. 4686, did not prosecute a suspensive appeal from the judgment in suit No. 4686, rendered and signed on June 28, 1929, and did not even apply for such suspensive appeal.

"11. That F. R. Wilson *caused a new writ to be issued under the judgment of June 28, 1929, in suit No. 4686, and the Sheriff of the Parish of Catahoula, acting under said writ, caused the property described in the complaint filed in this court by J. B. Smith, to be seized, and he proceeded to advertise same for sale, according to law, the sale to take place between legal sale hours, on August 24, 1929.*" (Italics by the writer.)

Plaintiff argues the case as if the appeal to the State Court of Appeals was from the judgment in No. 4590, in which event, had it been reversed for want of jurisdiction, unquestionably any execution thereunder would have been totally void. But that was not what happened. The original suit in the State Court, as stated earlier, was in rem, in which, had the process necessary to bring the property into the Court's custody been properly pursued, would have resulted not in a judgment against the debtor, but against the res or real property alone. However, the individual whose property was seized, instead of timely appearing in that case and appealing, saw fit to let it stand and to bring a direct action for annulment of the judgment in the same court which rendered it. In doing so, he submitted himself along with his demand in a manner requiring the proof of facts contradictorily with the defendant in the suit, one of the appellees here, and invoked the jurisdiction of the trial court to the extent it can not now be questioned. This was done in No. 4686 in which the District Court for Catahoula Parish rendered its decision, after having stopped the execution under No. 4590 by restraining order or preliminary injunction. After hearing the question of the alleged invalidity of the first judgment on the merits, it rejected the demand, and this decision was first affirmed by the appellate court, but on rehearing, that ruling was set aside and the decree in the first case was held to be null and void. It was the decision in No. 4686

from which the appeal had been taken, devolutively, or without staying execution. As disclosed by the above stipulations (No. 11) the writ of *fieri facias* under which the property was seized and sold was likewise issued under this second judgment which, as stated, had rejected the demand for nullity and ordered "the sheriff of Catahoula Parish (to) proceed to sell the property involved in suit No. 4590." The only way that this judgment in No. 4686 could be stayed was through a suspensive appeal, LSA Revised Statutes, Tit. 13, § 4212. See also the numerous cases cited by Judge Porterie in 106 F.Supp. 264, et seq. A sale made thereunder must stand and the only remedy of the former owner was to recover the proceeds from the execution creditor. See Jefferson v. Gamm, 150 La. 372, 90 So. 682; Bomarito v. Max Barnett Furniture Co., 177 La. 1010, 150 So. 2.

Authorities cited by appellant to sustain the argument that the judgment rendered by a court without jurisdiction is an absolute nullity and may be ignored, or its nullity pleaded as a defense against any one asserting a right to the property sold thereunder, may be conceded. Had Smith ignored the judgment in case No. 4590 and subsequently, he or his transferee had brought a petitory action to try title, the nullity could have been interposed to any claim by the purchaser under said void judgment. Failing in such an action to try title under the plea of nullity of judgment by which the property was sold, reversal on appeal would have had the effect of sustaining his title, certainly if the property had remained in the purchaser under the void original decree. In that event there would have been no further steps necessary by the defendant or appellee to carry out or make effective that judgment, such as execution. Again this was not done here, but the present appellant saw fit to provoke the issue immediately and before the alleged void judgment had been executed and the property could be sold, in a manner giving the Court to which he appealed un-

questioned jurisdiction to decide that issue and to render the type of judgment which was done. In the light of what happened in the way of pleadings and issues in the second case, No. 4686, no one would now pretend that but for the appeal the questions presently raised would have been forever foreclosed after the time for taking it in any manner had expired.

This solution is the only way that both the decisions of the State Court as to judgments rendered without jurisdiction, and Section 4212 of Tit. 13 LSA–Rev.Stat., as interpreted by said Courts, in the cases cited by Judge Porterie, can be reconciled and made effective. Appellant certainly cannot complain for he had his day in court in the last numbered case. His mistake was the failure to take a suspensive appeal in No. 4686.

Insofar as the *lis pendens* filed during the litigation of No. 4686 is concerned, it is sufficient to say that whatever effect it might have had was set at naught by the decree of the trial court rejecting the plea of nullity as to No. 4590, and could not be revived by a devolutive appeal so as to affect the rights of a purchaser in good faith at the sale. What the appellant seeks to do in this case, is in effect, to claim the benefits of a suspensive appeal which he failed to take at a time when it would have protected his rights, that is, in No. 4686. It is too late now after more than 20 years, during which appellee has held the only type of possession to which the property was susceptible, paying the taxes thereon and during which nothing was done by appellant except to execute or record certain transfers to other persons and later from them back to him. When the property became valuable for its prospective minerals, as in many other instances, the appellant woke up.

Without finding it necessary to repeat the authorities referred to by Judge Porterie in his opinion below, reported in 106 F.Supp. 264, et seq., the judgment below is

Affirmed.