John F. ISELIN and Joan B. Iselin,
Appellants,

v.

.Lester J. MENG, Lester J. Meng, Jr.,
James C. Meng, The General Box Com-
pany, Inc., and C. W. Hunter Co., Inc.,
Appellees.

No. 17688.

United States Court of Appeals
Fifth Circuit.

Aug. 13, 1959.

Rehearing Denied Sept. 11, 1959.

L. Bryan Dabney, Lucius B. Dabney,
Jr., Vicksburg, Miss. (Dabney & Dab-
ney, Vicksburg, Miss.), for appellants.

J. D. Thames, Vicksburg, Miss., Clar-
ence Clifton, Memphis, Tenn., Vollor &
Thames, Vicksburg, Miss., Clifton &
Mack, Memphis, Tenn. (Lawrence J.
Franck, Vicksburg, Miss., John B. Mack,
Memphis, Tenn., of counsel), for appel-
lees.

Before RIVES, Chief Judge, and
CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The plaintiffs, appellants here, claim
ownership of lands in the area known as

Diamond Point, situate in Warren County, Mississippi. They brought suit in the United States District Court for the Southern District of Mississippi against the defendants, appellees here, saying that the defendants had unlawfully taken possession of the land and refused to surrender it to the plaintiffs. A declaratory judgment was sought declaring the plaintiffs to be the owners of the land. The plaintiffs, by their complaint, alleged the source of their title to be a tax deed issued to them in April, 1949, by the Sheriff of Madison Parish, Louisiana. The tax deed described the land as being in Madison Parish, Louisiana, and is recorded in that Parish. Warren County, Mississippi, and Madison Parish, Louisiana, lie on opposite sides of the Mississippi River which is, for the most part, the boundary between the two states. The plaintiffs state in their complaint that the land involved was originally on the west of the Mississippi River and in the State of Louisiana, that although a change in the course of the river placed it west of the land, the land remained in Louisiana until, in 1955, as a result of the decree of the Supreme Court of the United States in the case of State of Mississippi v. State of Louisiana, 350 U.S. 5, 76 S.Ct. 29, 100 L.Ed. 6, rehearing denied 350 U.S. 905, 76 S.Ct. 175, 100 L.Ed. 794, "the lands became a part of Warren County, Mississippi." It is the claim of the plaintiffs that they acquired title from the State of Louisiana at a time when the land was a part of Louisiana and that their title was not lost or divested when the land became a part of Mississippi. The defendants filed a motion to dismiss asserting that the question raised by the suit had been settled by State of Mississippi v. State of Louisiana, supra.

Annexed to the motion are a number of exhibits. One of these is the Report of the Special Master to the Supreme Court in the Mississippi v. Louisiana case. This Report incorporates a stipulation entered in the record of the case by the State of Louisiana by which it was admitted that the area known as Dia-

mond Point was not in Louisiana but was in Mississippi. The Master discussed the evidence taken before him relating to the boundary between the two States as it was and as it had been. Findings were made based upon this evidence. The portion of the findings relating to Diamond Point concluded with the following:

"Suffice it to say that from the uncontradicted evidence I find that the State of Mississippi at all times for more than fifty years exercised jurisdiction and sovereignty over the body of land known as Diamond Point. This record discloses no assertion by the State of Louisiana prior to the institution of this suit, of any claim to such land.

"Summary of Findings of Fact as to Diamond Point:

"1. I find, based upon the admissions of the State of Louisiana and upon the evidence, that Diamond Point is located in the State of Mississippi, and that the correct boundary between the States of Mississippi and Louisiana in the Diamond Point area is as described in the next part of this Report.

"2. I find that under the doctrine of prescription the State of Mississippi has acquired title to the area known as Diamond Point and that its claim thereto has been acquiesced in by the State of Louisiana over a long period of time."

The Report of the Special Master was adopted. The Decree fixed the boundaries between the two States. Diamond Point, including the land claimed by the plaintiffs, is on the Mississippi side of the boundary.

The defendants also annexed to their motion to dismiss a copy of a final decree entered by the United States District Court for the Western District of Louisiana in an action brought by John F. Iselin in which a title was asserted to the land here involved under the same Louisiana tax deed as is relied upon in the present suit. The Louisiana case had

been held under advisement until Mississippi v. Louisiana was decided. After the decision of the Supreme Court the District Court for the Western District of Louisiana, on motion for summary judgment, held that under the Supreme Court decree the Louisiana tax deed was void and the grantees acquired nothing by it. The cause was dismissed with prejudice. The defendants here assert that the decree of the Court sitting in Louisiana is controlling on the question in this case.

■ It would seem that the District Court for the Western District of Louisiana, after determining that the land involved was situate in another state and another judicial district, should have dismissed the suit for lack of jurisdiction over the subject matter. 1 Barron & Holtzoff, Federal Practice and Procedure, Rules Ed., 137 et seq. § 72; Smith v. Landis, 5 Cir., 1954, 211 F.2d 166; Woolgar v. La Coste, D.C.W.D.La.1947, 69 F. Supp. 571. We think the judgment of the Court sitting in Louisiana is without validity. Ellenwood v. Marietta Chair Co., 158 U.S. 105, 15 S.Ct. 771, 39 L.Ed. 913; Equitable Trust Co. of New York v. Washington-Idaho Water, L. & P. Co., D.C.E.D.Wash.1924, 300 F. 601. If this be so then of course the judgment of the District Court of the Western District of Louisiana cannot be *res judicata* on the merits.

Although of the opinion that the decree of the District Court for the Western District of Louisiana is not *res judicata,* we find ourselves in complete agreement with the conclusion which it reached as to the validity of the tax deed which is the primary muniment of the plaintiffs' title.

■ In the report of the Special Master in the case of Mississippi v. Louisiana, supra, it was stated:

"The undisputed evidence showed that opposite the original mainland of Warren County, Mississippi, the land on the right or Louisiana bank of the Mississippi River at Diamond Point was eroded by action of the river over a long period of years and caved into the Mississippi River and disappeared.

"Contemporaneously a point bar (Diamond Point Bar) was formed and built by accretions to the Mississippi shore in a northerly and westerly direction until it extended over the entire territory known as Diamond Island or Diamond Island Towhead.

"As the Mississippi shore was thus extended by accretions, the thalweg or main navigable channel of the Mississippi River also moved in a northerly and westerly direction; and as the thread of said channel thus moved, the boundary line between the States of Louisiana and Mississippi was also moved in a northerly and westerly direction, remaining at all times at the thread of said channel around Diamond Point Bar to the north, west and south."

The soundness of this conclusion is sustained by the principles announced by this Court which, in a case very similar to the case before us, said:

"The center line of the main channel of the Mississippi River forms the boundary between Louisiana and Mississippi at the point where the land in controversy lies. Under the Mississippi law, a riparian proprietor on the Mississippi River owns to the thread of the stream. Changes in the physical aspects of riparian lands are common, and have resulted in much litigation in which certain legal principles have become firmly established.

"Where the main channel of a stream forms the boundary between states, and gradual changes wrought by natural causes occur in the physical topography of the banks or islands and in the channel of the stream, the main channel of the stream, in whatever changed location it may be, continues to be the boundary; but where an avulsion occurs by reason of a freshet or flood,

and the course of the stream suddenly is changed, the boundary remains at the center of the old channel of the deserted river bed.

"Applying these legal principles to the facts well pleaded in the petition, it clearly appears that no claim was stated upon which relief could be granted. The land in controversy, though originally a part of Louisiana, now lies in Warren County, Mississippi. The movement of the land was not caused by a sudden change in the course of the Mississippi River, but was gradually and imperceptibly accomplished over a period of half a century by natural causes inherent in the normal flow of the river. Irrespective of to whom the land in controversy once belonged, it has now become the property of the riparian proprietor of the Mississippi shore adjacent to the island." Iselin v. La Coste, 5 Cir., 1944, 139 F.2d 887, certiorari denied 321 U.S. 790, 64 S.Ct. 791, 88 L.Ed. 1080. See also Paepcke v. Kirkman, 5 Cir., 1932, 55 F.2d 814; Johnston v. State, 232 Miss. 102, 98 So.2d 445.

The approved findings of the Special Master show that the change of the thalweg or main channel of the stream was not the result of an avulsion but was caused by gradual erosion over a period of many years. It follows that the boundary followed the thalweg and that the land claimed by the plaintiffs was, as in Iselin v. La Coste, supra, in Warren County, Mississippi. The land claimed, being in Mississippi at the time of the issuance of the plaintiffs' tax deed, was not the subject of a grant from the State of Louisiana.

The plaintiffs' contention that a boundary change was effected and the land involved was transferred from one state to the other by the decree in Mississippi v. Louisiana cannot be sustained. The courts can determine the location of boundaries but cannot change them. State of Washington v. State of Oregon, 211 U.S. 127, 29 S.Ct. 47, 53 L.Ed. 118.

The adjudication of the boundary between states by the Supreme Court of the United States is controlling as to the situs of the property as being within the one state or the other and is binding upon parties litigant over the titles to lands. See Crawford v. White, Tex.Civ. App., 25 S.W.2d 629, certiorari denied 283 U.S. 823, 51 S.Ct. 346, 75 L.Ed. 1437.

The judgment of the district court is Affirmed.