Lloyd HAYES, Plaintiff-Appellee,

v.

**GULF OIL CORPORATION, now known by change of name as Chevron USA, Inc., Defendant-Appellant.**

No. 86–2700.

United States Court of Appeals, Fifth Circuit.

July 13, 1987.

John Philip Howe, The Chevron Companies, Margaret M. McKay, Houston, Tex., for defendant-appellant.

Sibley & Lamb, Thomas J. Sibley, Robert B. Dunham, Beaumont, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, BROWN, and JOHNSON, Circuit Judges.

CLARK, Chief Judge:

We are to decide in this case whether a United States District Court sitting in the Beaumont Division of the Eastern District of Texas has jurisdiction over the subject matter of a lawsuit disputing the title to real property located in the State of Colorado. The district court in Texas held that it had subject matter jurisdiction over this Colorado dispute. The defendant Gulf Oil

Corporation (Gulf) contends that the plaintiff's lawsuit, which alleges that title to an oil and gas leasehold had reverted to the plaintiff by operation of law, is a "local action," which can only be brought in the state in which the real property at issue is located. Plaintiff Lloyd Hayes questions the current viability of the local action rule and contends that, at most, the assertion of the local action doctrine merits a change of venue which can be and was waived by Gulf. Because we agree with Gulf that the local action doctrine remains a vital part of the fabric of the law, we reverse the district court's decision that it had subject matter jurisdiction and remand the case with directions to that court to dismiss the action or to transfer it to the district court in Colorado pursuant to 28 U.S.C. § 1631.[1]

## I. The Underlying Dispute

The underlying dispute in this case concerns the title to an oil and gas lease which was issued by the Bureau of Land Management of the United States Department of the Interior to the plaintiff Hayes for a ten-year term, effective August 1, 1975. This lease covered lands located in Montezuma County, Colorado. Hayes agreed to assign Gulf his interest in the lease in October 1977 for a five-year primary term, with an automatic extension if "actual drilling operations have been commenced on lands of another lease with which this lease is committed to an approved co-operative or unit plan."

Hayes and Gulf disagree as to whether this has occurred. Hayes approved the inclusion of the lease in the Yellow Jacket Unit Agreement in 1977, but the Yellow Jacket Unit was terminated as of April 2, 1983. However, all the acreage in the Yellow Jacket Unit, including this lease, was combined with the acreage in six other units to form the McElmo Dome Unit. The McElmo Dome Unit was compulsorily unit-

ized pursuant to a Colorado statute. Hayes never ratified the McElmo Dome Unit or consented to the inclusion of his lease therein. He thus claims that all interests in the federal lease reverted to him when the Yellow Jacket Unit was terminated. Gulf responds that Hayes' refusal to ratify the McElmo Dome Unit is irrelevant, since the unit was compulsorily unitized under state law.

Hayes filed suit against Gulf and Shell Oil Company (Shell) in the United States District Court for the Eastern District of Texas, claiming title and seeking a declaration that all interests under the lease belonged to him. After an amended complaint was filed, Gulf and Shell filed a joint motion to dismiss for lack of subject matter jurisdiction for two reasons: 1) Shell, with its principal place of business in Houston, Texas, was a non-diverse party; and 2) a federal district court sitting in Texas had no subject matter jurisdiction over a dispute about title to a Colorado leasehold. Hayes voluntarily dismissed Shell and again amended his complaint. Gulf then renewed its motion to transfer this action due to a want of jurisdiction pursuant to 28 U.S.C. § 1631.

The district court held that it had subject matter jurisdiction to adjudicate the question of leasehold title in lands located wholly in Colorado and denied Gulf's motion. The district court certified this issue for interlocutory appeal, 28 U.S.C. § 1292(b), and this court granted Gulf permission to appeal.

## II. The Local Action Doctrine

The questions presented are: whether Hayes' action is indeed local, whether the local action doctrine remains good law, and whether the rule affects only the venue of the court and may be waived.

1. **Transfer to cure want of jurisdiction**
   Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

■ A local action involving real property can only be brought within the territorial boundaries of the state where the land is located. *See Ellenwood v. Marietta Chair Co.*, 158 U.S. 105, 107, 15 S.Ct. 771, 771, 39 L.Ed. 913 (1895); *see also* 15 Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 2d § 3822, at 202–04 (1980). Chief Justice Marshall recognized the common law concept of the local action doctrine while sitting as a Circuit Justice in *Livingston v. Jefferson*, 15 F.Cas. 660 (C.C.D.Va.1811) (No. 8411). In that case, Edward Livingston sued former president Thomas Jefferson in a federal court in Virginia for an alleged trespass to land in Louisiana. The court dismissed the action, since an action for trespass to land in Louisiana was local and could not be heard in a Virginia court.

■ Following *Livingston*, the Supreme Court has consistently recognized that a local action must be brought within the state where the land is located. *See, e.g., Louisville & N.R.R. v. Western Union Telegraph Co.*, 234 U.S. 369, 34 S.Ct. 810, 58 L.Ed. 1356 (1914); *Ellenwood*, 155 U.S. at 107, 15 S.Ct. at 771; *Casey v. Adams*, 102 U.S. (12 Otto) 66, 67–68, 26 L.Ed. 52 (1880). This court has held that a local action must be brought in the state where the real property is located. *See, e.g., Iselin v. Meng*, 269 F.2d 345, 347 (5th Cir.), *cert. denied*, 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed. 183 (1959); *Shell Petroleum Corp. v. Moore*, 46 F.2d 959, 961 (5th Cir.1931). Other federal courts have recognized and applied the rule. *See, e.g., Humble Oil & Refining Co. v. Copeland*, 398 F.2d 364, 367 & n. 5 (4th Cir.1968); *Still v. Rossville Crushed Stone Co.*, 370 F.2d 324, 325 (6th Cir.1966), *cert. denied*, 387 U.S. 918, 87 S.Ct. 2030, 18 L.Ed.2d 970 (1967); *Minichiello Realty Associates, Inc. v. Britt*, 460 F.Supp. 896, 897–99 (D.N.J.1978), *aff'd without opinion*, 605 F.2d 1196 (3d Cir. 1979); *Central Transport, Inc. v. Theurer, Inc.*, 430 F.Supp. 1076, 1078–79 (E.D.Mich. 1977). State courts, including those of Texas and Colorado, refuse to entertain actions involving land located outside state boundaries. *See, e.g., Miller v. Miller*, 715 S.W.2d 786, 788 (Tex.Ct.App.1986) (citing

*Holt v. Guerguin*, 106 Tex. 185, 163 S.W. 10 (1914)); *Flader v. Campbell*, 120 Colo. 66, 207 P.2d 1188 (1949). The local action rule is so fundamental that state courts are not obligated to give full faith and credit to judgments from either federal or state courts sitting outside the local state's territorial boundaries. *See Iselin*, 269 F.2d at 347 (Louisiana federal court's judgment involving land situated in Mississippi is void and not *res judicata* in courts in Mississippi); *Humble Oil*, 398 F.2d at 367 (Texas courts have exclusive jurisdiction to determine title to realty in Texas; a South Carolina court decision would receive no full faith and credit in Texas courts). *See also Clarke v. Clarke*, 178 U.S. 186, 190, 20 S.Ct. 873, 876, 44 L.Ed. 1028 (1900) (Connecticut courts are not required to give full faith and credit to a judgment of the South Carolina Supreme Court concerning the construction of a will which affected the passing of title to land situated in Connecticut). What is explicit or implicit in all of these decisions is that federal and state courts lack jurisdiction over the subject matter of claims to land located outside the state in which the court sits.

### A. *Local or Transitory?*

The local action doctrine is so ingrained in our jurisprudence that a claimant does not normally challenge the rule's existence, but is more likely to argue that a particular cause of action is transitory in nature and not local. Chief Justice Marshall discussed this distinction between local and transitory actions in *Livingston* and concluded that the common law restrained the court to hold that an action for trespass to land, although an *in personam* action seeking monetary relief, was nevertheless local in nature because it could only take place in Louisiana. 15 F.Cas. at 664.

Chief Justice Marshall stated that the question whether an action was local or transitory should be controlled by federal law. *Id.* at 665. *See also* Wright, Miller & Cooper § 3822, at 207–08. However, the Supreme Court near the end of the century stated in dictum that the question whether an action is local depends on the law of the

forum state, *see Huntington v. Attrill*, 146 U.S. 657, 669–70, 13 S.Ct. 224, 228, 36 L.Ed. 1123 (1892), and lower federal courts, including this court, have applied state law to determine whether an action is local or transitory. *See Chateau Lafayette Apartments, Inc. v. Meadow Brook National Bank*, 416 F.2d 301, 304 n. 7 (5th Cir.1969). *See generally* Wright, Miller & Cooper § 3822, at 208–09 ("Fortunately the difference is not of great practical importance for in most instances state law has developed in accordance with the federal decisions.") (citing federal court decisions).

■ Plaintiff Hayes does not make a serious effort to contest the characterization of this lawsuit as local. Counsel at oral argument did suggest that what is really involved here is a contract dispute between Hayes and Gulf which just happens to involve the title to real property. We need not belabor this issue. Under Texas law it is clear that an interest in land under an oil and gas lease constitutes real estate, and that Hayes' action to terminate Gulf's interest is an action to try title to real property located in Colorado. *See Howell v. Union Producing Co.*, 392 F.2d 95, 111 (5th Cir.1968) ("under Texas law an oil and gas lease creates a determinable fee vesting property interests in the lessors and lessees"); *Roach v. Chevron U.S.A., Inc.*, 574 S.W.2d 200, 203 (Tex.Civ.App. 1978) ("rights to the surface are incident to the ownership of ... interests in land"). Hayes does not dispute the fact that he is asserting a legal right of title to real property interests situated in Colorado.[2]

### B. *The Effect of* Shaffer v. Heitner

■ Despite the overwhelming authority supporting the doctrine that local actions may only be brought within the territorial boundaries of the state where the land is situated, Hayes maintains that the local action rule is no longer a viable concept. We read Hayes' argument as making two interrelated propositions. First, that *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), overruled the local action rule. Second, that a United States district court in Texas can constitutionally exercise *in personam* jurisdiction over Gulf because it has subject matter jurisdiction by virtue of the grant of diversity jurisdiction under 28 U.S.C. § 1332.[3]

Hayes asserts that the district court's diversity jurisdiction depends on whether a Texas state court could exercise jurisdiction. Hayes submits that Texas law provides that state court jurisdiction is now co-extensive with that allowed by the United States Constitution. *See, e.g., Hall v. Helicopteros Nacionales de Colombia, S.A.* 638 S.W.2d 870 (Tex.1982), *rev'd on other grounds*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Hayes contends that after *Shaffer*, the Constitution only requires that "all assertions of state-court jurisdiction ... be evaluated according to the standards set forth in *International Shoe* and its progeny." 433 U.S. at 212, 97 S.Ct. at 2584 (footnote omitted). *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

More fundamentally, Hayes suggests that the local action doctrine is inconsistent with the underlying rationale of *Shaffer* which indicates that the sovereignty and the territoriality of the states are no longer the significant, controlling factors in determining the constitutionality of a state court's exercise of jurisdiction. Hayes concludes that, as long as a court has jurisdiction over the parties to a dispute, it has jurisdiction to adjudicate the parties' rights regardless of whether the dispute involves land located in another state.

Hayes has apparently abandoned the federal question basis as a jurisdictional ground on appeal, and indeed does not dispute Gulf's position that this case should be decided exclusively on the basis of state law. Since Hayes dismissed Shell as a party defendant, Gulf concedes that complete diversity exists.

---

**2.** The result would not be different if Colorado law governed the determination of whether this is a local action. *See Hagood v. Heckers*, 182 Colo. 337, 513 P.2d 208, 214 (1973).

**3.** Plaintiff Hayes alleged in his second amended complaint both federal question and diversity as bases of federal subject matter jurisdiction.

Hayes assigns much significance to Supreme Court language in *Shaffer* which overrules the case of *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1878), and cases which followed the *Pennoyer* rationale. *See Shaffer*, 433 U.S. at 212 & n. 39, 97 S.Ct. at 2584 & n. 39. In *Pennoyer*, the Court held that a state court could assert jurisdiction over a potential defendant under three circumstances: 1) where the defendant consents to the court's jurisdiction; 2) where the defendant is personally served within the boundaries of the state where the court sits; or 3) where the defendant owns property located in the state. The first two bases of jurisdiction involved *in personam* jurisdiction. The third basis for state court jurisdiction was grounded on the court's power over property within its territory. The effect of a judgment under this category was limited to the property located in the state supporting the jurisdiction. This category included both *in rem* and *quasi in rem* actions. An action *in rem* directly affected the property at issue. Jurisdiction was based on the presence of property in the state, which property was the subject of the dispute. An action asserting *quasi in rem* jurisdiction, on the other hand, was one based on the existence of property of a party located within the state in which the court sits, which property was not the subject of the dispute. *Cf. Hanson v. Denckla*, 357 U.S. 235, 246 n. 12, 78 S.Ct. 1228, 1235 n. 12, 2 L.Ed.2d 1283 (1958).

In *International Shoe Co.*, 326 U.S. 310, 66 S.Ct. 154, the Supreme Court shifted the focus with respect to *in personam* jurisdiction from the defendant's presence in the state, premised on the state's power over the person, to the defendant's "minimum contacts" with the forum state. *Id.* at 316, 66 S.Ct. at 158. The Supreme Court in *Shaffer* extended that "minimum contacts" analysis to all assertions of state court jurisdiction, including actions in which jurisdiction was based solely on the presence of a party's property within the state.

In *Shaffer*, the plaintiff shareholder of Greyhound Corporation stock filed a shareholder derivative suit in a Delaware court against Greyhound, a Greyhound subsidiary, and present and former officers and directors of both corporations. Their assertion of jurisdiction in the courts of Delaware over all defendants was based on a sequestration of shares of the corporation's stock which were statutorily located in Delaware. The shareholder suit concerned corporate management decisions and did not involve Greyhound stock in the State of Delaware. The Supreme Court held this *quasi in rem* assertion of jurisdiction was no longer sufficient in light of the *International Shoe* "minimum contacts" test. The statutory presence of the defendant's stock in Delaware, unrelated to the underlying cause of action, could not create minimum contacts which would confer jurisdiction.

Hayes' basic reading of *Shaffer* is that assertions of jurisdiction must now satisfy the *International Shoe* "minimum contacts" standard. The *Shaffer* opinion, however, is relevant to today's case only in determining whether the Texas federal district court can assert personal jurisdiction over the defendant Gulf. In view of Gulf's more than minimum contacts with Texas, it clearly has the power to do so. Indeed, Gulf does not contest the power of the court to assert personal jurisdiction over it.

Whether that same district court may exercise jurisdiction over the subject matter of this lawsuit is an entirely different question. The Supreme Court in *Shaffer* did not purport to address that question. It is true the Court stated that cases which relied on the *Pennoyer* principles of state court power were overruled to the extent they were inconsistent with the "minimum contacts" standard. *See Shaffer*, 433 U.S. at 212 n. 39, 97 S.Ct. at 2584 n. 39 ("It would not be fruitful for us to re-examine the facts of cases decided on the rationale[ ] of *Pennoyer*.... To the extent that prior decisions are inconsistent with this standard, they are overruled."). But Hayes' position that the local action doctrine cases fall within that category of overruled cases is incorrect. The Court was referring to past decisions which had discussed the constitutionality of state court assertions of personal jurisdiction over non-resident defendants on the basis

of the *Pennoyer* standard. *Shaffer* cannot be properly read to condemn all federal and state court precedents which define the limits of state sovereignty and territorial boundaries. We instead adhere to clear Supreme Court and Fifth Circuit precedents which have never questioned the vitality of the local action doctrine.

Hayes' position that 28 U.S.C. § 1332 provides subject matter jurisdiction if a dispute over land outside the state is between citizens of different states and the requisite jurisdictional amount is satisfied must also fail. The Congressional grant of diversity jurisdiction pursuant to express Constitutional authority has been vested in inferior courts of the United States since the Judiciary Act of 1789. And since 1811 such courts have insisted that a local action must be brought where the land is located. Moreover, the positive grants of diversity and federal question jurisdiction cannot be viewed as absolutes. Other fundamental, judicially created limitations to a federal district court's exercise of its subject matter jurisdiction exist. In the areas of domestic relations and probate, federal courts have refused to adjudicate disputes even though diversity requirements have been met. *See Jagiella v. Jagiella*, 647 F.2d 561, 564 (5th Cir.1981) (domestic relations exception); *Turton v. Turton*, 644 F.2d 344, 347 (5th Cir.1981) (probate exception). *See generally* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 2d § 3609 and § 3610 (1984).

The analogy of local actions to the probate and domestic relations exceptions is not exact. A federal court must abstain in the latter cases regardless of where it sits when it is asked to modify a divorce decree or probate a will. But these analogies do illustrate that subject matter jurisdiction is not required to be exercised in every situation it literally embraces. In the areas of domestic relations and probate, states have a strong interest in the proper implementation of state policy, and local courts have a well-developed competence. *See Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir.1978) (discussing why domestic relations disputes

are beyond the purview of federal courts); Wright, Miller & Cooper § 3609, at 461.

Equally cogent reasons also underlie application of the local action doctrine. Contrary to Hayes' assertions, the rule is not out-dated and archaic. The rationale for the rule is as forceful today as it was in Chief Justice Marshall's time, and remains as, if not more, compelling than the domestic relations or probate exceptions. If litigants were free to file claims to the same Colorado real property in different federal and state courts throughout the country, the State of Colorado could not give conflicting judgments full faith and credit. More significantly, title to real estate would never be certain again since it could be involved in unknown claims in unknown fora with no practical method for control of liens, *lis pendens* or priority of title claims. State land title records would become unmanageable. The local action rule prevents courts unfamiliar with local property rights and laws from interfering with title to real property which must be recorded under a unitary set of rules to keep it free of conflicting encumbrances. These local rules ensure that real property actions will be tried in a convenient forum and that orderly notice to all interested parties—through Colorado land title records—will be facilitated.

In short, overwhelming precedent, including cases from this Circuit, which hold that a court sitting in one state cannot adjudicate title to land situated in a different state, and numerous salutory reasons for continuing the local action rule to determine subject matter jurisdiction compel reversal of the district court's judgment.

## C. *Venue or Jurisdiction?*

Hayes contends in the alternative that the local action doctrine relates only to venue and not to a court's subject matter jurisdiction. This distinction is significant in the case at bar because a defect in venue must be raised by timely motion or by pleading by the objecting party. *See* Fed. R.Civ.P. 12(h)(1). A defect in the district court's subject matter jurisdiction, on the other hand, may be raised at any time by

the parties or the court itself and cannot be waived. *See* Fed.R.Civ.P. 12(h)(3). Hayes submits that Gulf did not raise a defense of improper venue in its first pleading or in a pre-pleading motion as required by Rule 12(h)(1).[4]

◼ We need not belabor this issue of procedural waiver since we are bound by Circuit precedent to hold that a federal district court sitting in Texas does not have subject matter jurisdiction over Hayes' claim of title to the federal oil and gas lease. *See Iselin*, 269 F.2d 345. In *Iselin*, this court held that a Louisiana federal district court should have dismissed an action adjudicating title to land in Mississippi "for lack of jurisdiction over the subject matter" of the lawsuit. *Id.* at 347. The assertion that an action is local raises more than the court's venue.

Hayes argues that *Shaffer* 's rejection of territoriality as the controlling concept of state court jurisdiction should persuade us that state boundaries relate only to venue. Our rejection of Hayes' argument that *Shaffer* abrogates the local action doctrine also answers this assertion.

Hayes cites cases from other courts as precedent for treating the local action issue as a question of venue.[5] None of the cases have confronted the issue we confront here. For example, in *X–Rail Systems, Inc. v. Norfolk and W. Ry.*, 485 F.Supp. 553 (D.N.J.1980), a federal district court in New Jersey was confronted with a lawsuit involving the termination of a lease to land in Illinois. The court transferred the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) and § 1406(a), the federal venue statutes. *See id.* at 555. In granting the defendant's motion to transfer the case under the venue statutes, the New Jersey federal district court did not consider whether it had jurisdiction over the subject matter of the dispute.[6]

### III. Conclusion

By invoking the jurisdiction of the United States District Court for the Eastern District of Texas, Hayes seeks to have himself declared the owner of an oil and gas lease covering land located in Colorado. The local action doctrine, however, is alive and well in post-*Shaffer* jurisprudence. Accordingly, that suit must be litigated, if anywhere, in a court in Colorado of competent jurisdiction. Accordingly, we remand this case and direct the district court to dismiss Hayes' action or to transfer the action to the proper United States District Court in Colorado pursuant to 28 U.S.C. § 1631.

REVERSED and REMANDED.

---

4. We note that Gulf and Shell in their answer to Hayes' first amended complaint did move pursuant to 28 U.S.C. § 1631 for a transfer to cure a want of jurisdiction. Because we decide that the local action rule determines a court's subject matter jurisdiction, we express no view as to whether the invocation of § 1631 was sufficient to raise the venue issue under Fed.R.Civ.P. 12(h).

5. *See e.g., Still,* 370 F.2d at 325; *X–Rail Systems, Inc. v. Norfolk and W.Ry.,* 485 F.Supp. 553 (D.N.J.1980); *French v. Clinchfield Coal Co.,* 407 F.Supp. 13, 15 (D.Del.1976); *Wheatley v. Phillips,* 228 F.Supp. 439, 440–42 (W.D.N.C.1964); *Eddington v. Texas & N.O.Ry.,* 83 F.Supp. 230 (S.D.Tex.1949).

6. Transfer pursuant to § 1631 was not available at the time of this decision.