**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELDEE-K RENTAL PROPERTIES, LLC, a Connecticut limited liability company, on behalf of itself and all others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> DIRECTV, INC., a Delaware corporation, *Defendant-Appellee*. | No. 11-17994 <br><br> D.C. No. 3:11-cv-02416-CRB <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, Senior District Judge, Presiding

Argued and Submitted
November 7, 2013—San Francisco, California

Filed April 9, 2014

Before: Jerome Farris, Susan H. Black[*], and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

---

[*] The Honorable Susan H. Black, Senior Circuit Judge for the U.S. Court of Appeals for the Eleventh Circuit, sitting by designation.

## SUMMARY[**]

### Jurisdiction

The panel affirmed the district court's Fed. R. Civ. P. 12(b)(1) dismissal for lack of subject matter jurisdiction of Eldee-K Rental Properties, LLC's complaint against DIRECTV, Inc.

Eldee-K, which owns a residential apartment building in Connecticut, sought to certify a class of all landlords who own and lease residential multiple dwelling units in the United States on which DIRECTV installed equipment.

The local action doctrine vests exclusive jurisdiction over specified types of actions involving real property in the forum where the property is located. The panel held that the local action doctrine is jurisdictional. The panel also held that it was bound by California law as to when an action constituted a local action for purposes of considering the court's jurisdiction. The panel held that Eldee-K's action was a local action under California law, and therefore had to be brought in Connecticut where the real property at issue was located.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Jeffrey S. Nobel, Robert A. Izard (argued), and Mark P. Kindall, Izard Nobel LLP, West Hartford, Connecticut; Alan R. Plutzik and Jennifer Rosenberg, Bramson, Plutzik, Mahler & Birkhaeuser, LLP, Walnut Creek, California, for Plaintiff-Appellant.

Andrew E. Paris (argued), Grace W. Kang, Sayaka Karitani, and Alex Akerman, Alston & Bird LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

IKUTA, Circuit Judge:

The district court dismissed Eldee-K Rental Properties, LLC's complaint against DIRECTV, Inc. for lack of subject matter jurisdiction. Because the district court correctly determined that Eldee-K's action was a local action under California law, and therefore had to be brought in Connecticut where the real property at issue is located, we affirm the district court's dismissal of this action.

I

Eldee-K Rental Properties, LLC, is a limited liability company organized under the laws of Connecticut. It owns a residential apartment building in Hartford, Connecticut.

In May 2011, Eldee-K filed a complaint against DIRECTV, a direct broadcast satellite television provider, alleging that DIRECTV has a policy of installing satellite

reception equipment in common areas of apartment buildings and other multiple dwelling units (such as the building's exterior walls or rooftop) without the landlord's consent. According to the complaint, DIRECTV requires prospective subscribers who reside in multiple dwelling units to complete an installation form authorizing the installation of equipment in common areas. A tenant can either complete Part 1 of the form by obtaining the landlord's signature, or Part 2 of the form by certifying that the landlord has verbally authorized the installation or that the lease does not require landlord consent.[1] The complaint alleges that DIRECTV permanently installed equipment at Eldee-K's apartment building, including by drilling holes in the exterior of the building, without obtaining Eldee-K's consent. Beyond alleging that DIRECTV drilled holes in the building's exterior, the complaint did not identify the specific common areas on its property where the installation took place.

Based on these allegations, Eldee-K sought to certify a class of all landlords who own and lease residential multiple dwelling units in the United States on which DIRECTV installed equipment based on Part 2 of its installation form. Eldee-K brought three causes of action against DIRECTV. First, Eldee-K alleged that DIRECTV violated California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code

---

[1] According to the complaint, Part 2 of DIRECTV's installation release form provides that

> Landlord approval of a DIRECTV System installation at _____ (address) has been verbally approved by my landlord (or is not required pursuant to my lease or rental agreement).

The complaint does not contain the text of Part 1 of the form.

§§ 17200–10, which makes a person who engages in unfair competition subject to an injunction and other civil penalties. The complaint alleged that DIRECTV's use of Part 2 of the installation form was an unfair business act that violated the policies embodied in California Penal Code § 602(m), which makes "[e]ntering and occupying real property or structures of any kind without the consent of the owner" a misdemeanor criminal offense. Through this claim, Eldee-K sought to enjoin DIRECTV from using Part 2 of the installation form.

Eldee-K's second and third causes of action were for negligence. Eldee-K alleged that DIRECTV negligently breached a legal duty not to install its equipment in common areas of apartment buildings owned by the putative class without the landlord's consent. Eldee-K sought declaratory and injunctive relief in Count II to prohibit DIRECTV's use of its Part 2 policy. In its third count, Eldee-K sought damages for the conduct.

DIRECTV moved to dismiss the complaint on the ground that the district court lacked subject matter jurisdiction over Eldee-K's claims under the local action doctrine, which vests exclusive jurisdiction over specified types of actions involving real property in the forum where that property is located. DIRECTV argued that Eldee-K's claims are local in nature, and therefore must be brought in Connecticut, the state where the property is located.

The district court agreed. It read Eldee-K's complaint to focus on DIRECTV's "unauthorized entry onto property" pursuant to Part 2 of the installation form. Because "the key harm" in the complaint related to trespass on real property situated in Connecticut, the district court held that the local action doctrine deprived it of jurisdiction to adjudicate the

claim.  The district court therefore dismissed it with prejudice under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Eldee-K timely appealed.

We have jurisdiction to review Eldee-K's appeal under 28 U.S.C. § 1291.  We review de novo district court dismissals of actions based on Rule 12(b)(1).  *Viewtech, Inc. v. United States*, 653 F.3d 1102, 1103–04 (9th Cir. 2011).

II

To determine whether the district court correctly applied the local action doctrine in this context, it is helpful to review the history and current status of this longstanding rule.

A

The local action doctrine has an ancient heritage. According to legal historians, the distinction between local and transitory actions began to arise in England during the 15th and 16th centuries.  *See* William H. Wicker, *The Development of the Distinction Between Local and Transitory Actions*, 4 Tenn. L. Rev. 55, 58–59 (1925).  Before the 15th century, jurors relied on their personal knowledge of a dispute to decide cases.  Witnesses, as we use them today, played no role in court.  *See id.* at 55–56; *cf. Livingston v. Jefferson*, 15 Fed. Cas. 660, 663 (C.C.D. Va. 1811) (op. of Marshall, J.). For this reason, a plaintiff had to plead the location of the dispute, and at least some members of every jury had to be drawn from that location.  *See* Wicker, *supra*, at 55, 59–60. After witnesses began to testify during the 15th century, courts started to relax the rules requiring jurors to come from the vicinity of the dispute.  *See id.* at 55–57, 60.

The old rules were maintained, however, for actions directly operating on real estate or personal actions closely connected with real property, and courts still required plaintiffs to plead and prove the location where these causes of action arose. *See id.* at 62. Such actions were referred to as local actions and were required to be brought in the county where the real estate was located, while actions for which the plaintiff did not need to identify the location of the dispute were called transitory actions and could be brought in any county in England. *See id.* at 61–62. By the late 18th century, leading jurists had observed that these distinctions were outmoded, *see, e.g.*, *Mostyn v. Fabrigas*, (1774) 1 Cowp. 161, 176 (K.B.) (op. of Lord Mansfield) (quoted in Wicker, *supra*, at 63), but they nevertheless persisted as part of English common law.

The distinction between local and transitory actions was recognized as part of American common law in the leading case of *Livingston v. Jefferson*. In this case, Chief Justice John Marshall, sitting as a circuit judge in Virginia, held that a federal court in Virginia lacked subject matter jurisdiction to adjudicate an action against former President Thomas Jefferson to recover damages for trespass on real estate in Louisiana. *See* 15 Fed. Cas. at 665. Although Chief Justice Marshall expressed skepticism about the value of the local action doctrine, *see id.* at 664, he acknowledged that American law had incorporated "the ancient rules" of English common law, including the rule "that actions are deemed transitory, where transactions on which they are founded, might have taken place anywhere; but are local where their cause is in its nature necessarily local," *id.* at 664–65.

The Supreme Court subsequently confirmed that federal law incorporates the local action doctrine. As the Court

explained, "[t]he distinction between local and transitory actions is as old as actions themselves, and no one has ever supposed that laws which prescribed generally where one should be sued, included such suits as were local in their character, either by statute or the common law, unless it was expressly so declared." *Casey v. Adams*, 102 U.S. 66, 67–68 (1880). Accordingly, the Court interpreted a federal statute allowing a national bank to be sued in any jurisdiction where the bank is located as pertaining to transitory actions only, because actions that are local in character must be brought "where the thing on which they are founded is situated." *Id.* In a subsequent opinion, the Supreme Court confirmed that a federal court lacked jurisdiction over a local action involving real property situated in a different state. *See Ellenwood v. Marietta Chair Co.*, 158 U.S. 105, 107–08 (1895). In *Ellenwood*, the Court considered an action brought in a federal circuit court in the Southern District of Ohio against an Ohio corporation for trespass on land situated in West Virginia. *Id.* at 106, 108. The Court sua sponte dismissed the action for lack of jurisdiction, because "an action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action, and can only be brought within the state in which the land lies." *Id.* at 107. Because the "entire cause of action was local," the Court concluded that the federal court "had no jurisdiction of the cause of action, and for this reason, if for no other, rightly ordered the case to be stricken from its docket, although no question of jurisdiction had been made by demurrer or plea." *Id.* at 108.

The Supreme Court has sometimes applied this doctrine narrowly. In *Stone v. United States*, for instance, the Court held that, where the gravamen of an action is conversion of lumber and the complaint demanded the value of the personal property taken, rather than stating a claim for trespass that

sought damages for the harm to the land caused by the trespass, as in *Ellenwood*, then the action was transitory and the local action doctrine was not applicable.  167 U.S. 178, 182 (1897).  But the Supreme Court has not overruled the doctrine, and has referenced it in cases decided after *Ellenwood*.  *See, e.g.*, *Philadelphia Co. v. Stimson*, 223 U.S. 605, 622 (1912) (holding that a District of Columbia court had jurisdiction over a dispute regarding the federal government's statutory authority to encroach on the plaintiff's property in Pennsylvania because, among other reasons, the action was not "to restrain trespass" as in *Ellenwood*); *Dull v. Blackman*, 169 U.S. 243, 246–47 (1898) (noting that a dispute was a local action and had to be litigated in the state where the land was situated, though a dispute that "did not operate directly upon the lands" could be brought in a different state).

We have also recognized the continued applicability of the local action doctrine in determining the jurisdiction of federal courts.  *See, e.g.*, *United States v. Byrne*, 291 F.3d 1056, 1060 (9th Cir. 2002) (observing that "the federal district courts' jurisdiction over actions concerning real property is generally coterminous with the states' political boundaries," and holding that the court's jurisdiction in that case was "properly exercised in the state where the land is situated" because the action was local); *Josevig-Kennecott Copper Co. v. James F. Howarth Co.*, 261 F. 567, 569 (9th Cir. 1919) (discussing whether the action was local or transitory, and acknowledging that the district court had jurisdiction over the action unless the suit was local in nature); *Columbia River Packers' Ass'n v. McGowan*, 219 F. 365, 372–73, 376 (9th Cir. 1914) (holding that a district court in Washington lacked jurisdiction to enjoin a trespass and

abate a nuisance where the injury and conduct occurred in Oregon).

To the extent they have reached the issue, other circuit courts generally agree that the local action doctrine is jurisdictional in nature, and not merely a rule of venue that can be waived. *See Bigio v. Coca-Cola Co.*, 239 F.3d 440, 443 (2nd Cir. 2000) (assuming the local action doctrine is jurisdictional); *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987) (recognizing that "federal and state courts lack jurisdiction over the subject matter of claims to land located outside the state in which the court sits");[2] *see also* 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3822 (noting that a majority of federal courts have concluded that the local action doctrine is a rule of subject matter jurisdiction). Those circuit courts that have discussed the local action doctrine as a matter of venue have not directly resolved the question whether the doctrine also constrains the jurisdiction of federal courts. *See Raphael J. Musicus, Inc. v. Safeway Stores, Inc.*, 743 F.2d 503, 506 (7th Cir. 1984) (applying the local action doctrine as a matter of venue without directly addressing jurisdictional issues). Because the Supreme Court has indicated a "marked desire to curtail" federal courts' "drive-by jurisdictional rulings," *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (internal quotation marks omitted), we do not read these out-of-circuit

---

[2] Despite the clarity of *Hayes*, later Fifth Circuit opinions have suggested that the question whether the local action doctrine relates to jurisdiction or venue remains unresolved. *See, e.g.*, *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 721 n.4 (5th Cir. 2010) (noting, without discussing *Hayes*, that "questions remain as to whether the local action doctrine runs to the jurisdiction or the venue of a court").

decisions as providing guidance as to whether the local action doctrine is jurisdictional in nature.

Our conclusion that the local action doctrine is jurisdictional is not free from doubt. The Supreme Court has recently clarified that judge-made rules are not jurisdictional because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Bowles v. Russell*, 551 U.S. 205, 211 (2007) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004)) (internal quotation marks omitted). But Congress has not directly spoken on whether federal courts' jurisdiction is constrained by the local action doctrine, even though it historically acknowledged the existence of such a jurisdictional limitation. *See* Act of May 4, 1858, ch. 27, 11 Stat. 272, 272 (providing, with respect to the service of process, that "in all cases of a local nature at law or in equity where the land or other subject-matter of a fixed character lies partly in one district and partly in another district, within the same State, the plaintiff may bring his action or suit in the circuit or district court of either district, and the court . . . shall have jurisdiction to hear and decide the same . . . as fully as if the land or other subject-matter were wholly within the district for which such court is constituted").

Eldee-K points out that Congress has recently amended the federal venue statutes to eliminate use of the local action doctrine in venue decisions. *See* 28 U.S.C. § 1391(a)(2) ("Except as otherwise provided by law— . . . the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature."). While § 1391(a)(2) is not directly applicable here because Eldee-K's action was filed before its effective date of January 6, 2012, Pub. L. No. 112-63, § 205, 125 Stat. 758, 764–65, Eldee-K argues that if Congress has concluded that the local action

doctrine does not affect a federal court's *venue*, a fortiori the doctrine should not affect a federal court's *jurisdiction*. Although such an inference is reasonable, inference alone is insufficient to overrule Supreme Court precedent. Venue and subject matter jurisdiction are distinct concepts, and Congress's rejection of the local action doctrine in the venue context does not overrule the Supreme Court's prior determination that the local action doctrine is jurisdictional. We are bound by *Ellenwood* until either the Supreme Court rules otherwise, *Agostini v. Felton*, 521 U.S. 203, 237 (1997), or Congress enacts an applicable jurisdictional statute.

B

Because California law governs whether this action is local or transitory in nature, *see Huntington v. Attrill*, 146 U.S. 657, 669–70 (1892), we now review California's law on this issue.

Like most states, California adopted the common law distinction between local and transitory actions. *See Ophir Silver Mining Co. v. Super. Ct.*, 147 Cal. 467, 474 (1905) ("We could not . . . without disregarding the law which we have made for ourselves, as well as the long course of decisions in England and the United States, hold that an action for damages to realty situated in the state of Nevada can be maintained in the courts of California."). Indeed, from 1851, during the earliest days of its statehood, California limited its courts to hearing local actions that arose "in the county in which the subject of the action or some part thereof, is situated, subject to the power of the court to change the place of trial." Henry J. LaBatt, *The California Practice Act* 33, 39–41 (2d ed. 1858) (providing the text of section 18 of "An act to regulate proceedings in civil cases in the courts of

justice in this state," commonly known as the Practice Act, which passed on April 29, 1851). About 28 years later, California enshrined the local action doctrine in its state constitution, requiring "that all actions for recovery of the possession of, quieting the title to, or for the enforcement of liens upon real estate, shall be commenced in the county in which the real estate, or any part thereof, affected by such action or actions is situated." Cal. Const. Art. VI, § 5 (1879). California has retained a version of section 18 of the Practice Act to this day, *see* Cal. Civ. Proc. Code § 392,[3] although it repealed the constitutional provision in 1966.

California courts drew on common law concepts to determine which sorts of actions were local in nature for purposes of implementing these provisions. *See, e.g.*, *Samuel v. Allen*, 98 Cal. 406, 407–08 (1893) (relying on common law principles that an action for damages from breach of a mortgage contract is an action for money due, and "is not therefore a local action"); *Le Breton v. Super. Ct.*, 66 Cal. 27, 29–30 (1884) (adopting the common law principle that an action against a trustee to enforce a trust on real property is not local).

Under California law, there are three broad categories of local actions: (1) actions to recover or determine rights or interests in real property; (2) actions to remedy injuries to real

---

[3] Section 392 currently treats as local actions "(1) [f]or the recovery of real property, or of an estate or interest therein, or for the determination in any form, of that right or interest, and for injuries to real property" and "(2) [f]or the foreclosure of all liens and mortgages on real property." Cal. Civ. Proc. Code § 392.

An earlier version of section 392 also deemed local actions "[f]or the partition of real property." Cal. Civ. Proc. Code § 392 (1872).

property; and (3) actions to foreclose on liens and mortgages on real property. *See* Cal. Civ. Proc. Code § 392(a); *see also Grocers' Fruit Growing Union v. Kern Cnty. Land Co.*, 150 Cal. 466, 472–73 (1907) (concluding that an action for the specific performance of a contract to convey land was "an action for the determination of a right or interest in real property" and thus local); *Ophir*, 147 Cal. at 476 (holding that an action to enjoin injuries to real property through trespasses was local). All other actions are transitory. *See Golden Cross Mining & Milling Co. v. Spiers*, 115 Cal. 247, 250 (1896).

To determine whether a particular action relates to real property and thus is local, California courts assess "the allegations of the complaint" and "the nature of the judgment which might be rendered thereon, assuming the truth of the allegations." *Neet v. Holmes*, 19 Cal. 2d 605, 607 (1942); *see also Ophir*, 147 Cal. at 476–77. In conducting this analysis, California courts look to the substance of the lawsuit rather than how the plaintiff framed the causes of action in the complaint. *See Ophir*, 147 Cal. at 473–77. In *Strosnider v. Pomin*, for instance, plaintiff sought to quiet title to an easement over real property owned by the defendants while also seeking damages for fraudulent misrepresentation, because the defendants had previously induced the plaintiff to drop a prior quiet title action by falsely offering to let him use that easement. *See* 32 Cal. App. 2d 103, 104–05 (1939). According to the defendants, because the fraudulent misrepresentation claim was transitory, the entire suit should have been brought in the county where they resided, instead of the county where the property at issue was located. *Id.* at 106–07. The court disagreed. After reviewing the complaint as a whole, the court concluded that the substance of the complaint was for injury to the plaintiff's real property, even

though the second cause of action was framed as one for fraudulent misrepresentation. *Id.* at 108.  The court reasoned that the gravamen of the plaintiff's complaint was the defendants' obstruction of his right of way, "which resulted from the dismissal of the prior action through the fraud of defendants." *Id.*  Therefore, the entire action was local. *Id.* at 110.

Eldee-K argues that we should not rely on the cases explicating California's local action doctrine as set forth in section 392 of the California Code of Civil Procedure, because that statute relates to venue, not to jurisdiction.  We disagree.  Both section 392 and the cases interpreting this statute provide California's views regarding the sort of actions that are local in nature.  Section 392 codified then-existing common law principles, *see Ophir*, 147 Cal. at 474; *see also* Cal. Civ. Code § 22.2 ("The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State."), and the state judicial decisions interpreting the statutory definition of local actions provide further guidance on California's views.  The local actions listed in section 392 (e.g., actions directly affecting the title to real property or involving injury to real property) are consistent with the common law local action doctrine. *See, e.g.*, *Ellenwood*, 158 U.S. at 107 ("By the law of England, and of those states of the Union whose jurisprudence is based upon the common law, an action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action and can only be brought within the state in which the land lies."); *Huntington*, 146 U.S. at 669 (referring to actions involving "the rights of real property, the subject being fixed and immovable" as local).  Accordingly, we are bound by

California's views, as explicated in both case law and statute, as to when an action constitutes a local action for purposes of considering our jurisdiction. *See Huntington*, 146 U.S. at 669.

Eldee-K also argues that because we are bound by California's determination as to the nature of an action (whether local or transitory), we are also bound by California's determination that the local action doctrine is a venue provision, and that state courts may transfer local actions to other courts within the state. Cal. Civ. Proc. Code § 392(a). In other words, Eldee-K contends that because California treats the local action doctrine as a venue provision, we should do the same. Again we disagree. California's procedural rules have no effect on our analysis of our own subject matter jurisdiction, which is purely a question of federal law. *See Kontrick*, 540 U.S. at 452 (recognizing that only Congress may define the lower federal courts' subject matter jurisdiction). We look to state law only for a determination of which types of actions are deemed to be local in nature, but state law does not control the effect of such a determination on our jurisdiction.

## III

With these principles in mind, we now turn to the question whether, under California law, Eldee-K's complaint is a local action relating to real property in Connecticut. To determine whether the substance of the action relates to real property, we consider the allegations of the complaint and the relief sought.

The nature of Eldee-K's complaint turns on whether its claim under California's unfair competition law (UCL) is

local or transitory.**[4]** Section 17200 of the California Business and Professions Code prohibits "unfair competition," which it defines to include, in relevant part, "any unlawful, unfair or fraudulent business act or practice." Eldee-K seeks an injunction under section 17203, which provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in [a] court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203. To maintain a claim under section 17203, Eldee-K must show it "has suffered injury in fact and has lost money or property as a result of the unfair competition." *Id.* § 17204.

We consider both the complaint's allegations and the relief sought. *See Neet*, 19 Cal. 2d at 607; *Ophir*, 147 Cal. at 477. The allegations in support of Eldee-K's UCL claim reveal that the substance of the claim relates to real property. First, the complaint alleges that the common questions of law and fact for purposes of establishing a class action include the question "[w]hether DIRECTV's installation and maintenance of Equipment at Plaintiff's and Class members' [multiple dwelling units] upon receipt of Part 2 of the DIRECTV Installation Form violates" the UCL. In Count I of the complaint, Eldee-K alleges that DIRECTV violated the UCL by adopting practices "with the purpose and effect of enabling the illegal installation of the Equipment in and on the [multiple dwelling units] of Plaintiff and members of the class." Further, the complaint alleges that the injury suffered by Eldee-K is the "unauthorized use of common or restricted areas of [its] property." Finally, the complaint alleges that DIRECTV's actions are inconsistent with California Penal

---

**[4]** Although Eldee-K concedes that its negligence claims are local, California would treat its entire action as transitory if its unfair competition claim is transitory. *Smith v. Smith*, 88 Cal. 572, 576 (1891).

Code § 602(m), which criminalizes trespasses committed by a person "[e]ntering and occupying real property" without the owner's consent.  Each of these allegations is based on an injury to the plaintiff's real property by DIRECTV's unauthorized trespass on its apartment building's common areas, *cf. Ophir*, 147 Cal. at 476–77; *Strosnider*, 32 Cal. App. 2d at 108, and therefore the allegations demonstrate that the substance of Eldee-K's UCL claim relates to real property.

The relief sought by the complaint further supports the conclusion that the substance of Eldee-K's UCL claim is to remedy a trespass to land.  Through its UCL claim, Eldee-K seeks injunctive and other equitable relief to enjoin DIRECTV from using Part 2 of the installation form, because absent such relief "DIRECTV will continue to engage in some or all of these unfair acts."  *Cf. Ophir*, 147 Cal. at 477. Reading the complaint as a whole, the substance of the unfair acts alleged in the complaint is DIRECTV's trespass on Eldee-K's real property.  Accordingly, the relief sought is in substance an injunction against further trespass, which confirms that Eldee-K's UCL claim is local.  *See id.*

Eldee-K argues that its UCL claim is transitory, not local, because the gravamen of the claim is that "DIRECTV 'engages, has engaged, or proposes to engage in unfair competition' on its nationwide policy of accepting sham consents through its installation form," which Eldee-K seeks to enjoin.   Eldee-K thus views "the unfairness" of DIRECTV's alleged policy, rather than its trespass on Eldee-K property, to be the focus of its UCL claim.  Eldee-K contends that the injury to real property is "merely incidental" to its UCL claim and does not render the complaint as a whole local.

We disagree.  To have standing to challenge DIRECTV's policy, Eldee-K had to allege a loss of money or property. *See* Cal. Bus. & Prof. Code § 17204 (permitting an action under the UCL to be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition").  The only injury Eldee-K has pointed to that was caused by DIRECTV's use of Part 2 of its installation form is the alleged injury to Eldee-K's real property through the unauthorized installation of equipment. Although a direct competitor of DIRECTV could conceivably claim an injury stemming from DIRECTV's policy of using Part 2 of the installation form (on the ground, for example, that such a policy provides an unfair competitive advantage to DIRECTV), Eldee-K cannot point to any such injury. Because the only injury Eldee-K claims to have suffered is a trespass on its real property, the harm to its real property is not merely incidental to its UCL claim.  *See Strosnider*, 32 Cal. App. 2d at 108 (holding that a fraud claim was local when the only damages alleged to have been suffered stemmed from an "injur[y] [to] the real property of plaintiff").

Taken together, Eldee-K's allegations and the relief sought in its complaint indicate that the essence of Eldee-K's UCL claim is a trespass, which is a local action under California law.  Eldee-K has conceded that its two negligence claims are also local, and therefore its entire action is local in nature.  Because the real property at issue is in Connecticut, the district court here lacked subject matter jurisdiction to adjudicate Eldee-K's action. *See Ellenwood*, 158 U.S. at 108.

**AFFIRMED.**